## 17846

CLANTON'S AUTO AUCTION SALES, INC., Respondent, v. Paul YOUNG ET AL., Defendant, of Whom Paul Young is, Appellant

(122 S. E. (2d) 640)

*Messrs. Murchinson, West & Marshall,* of Camden, *for Appellant,*

*Messrs. LeRoy M. Want,* of Darlington, and *John S. Hoar,* of Sumter, *for Respondent,*

November 10, 1961.

OXNER, Justice.

Clanton's Auto Auction Sales, Inc., brought this action to recover possession of a 1960 Volkswagen automobile, or the value thereof if possession could not be had. None of the defendants answered except Paul Young who denied that plaintiff was entitled to possession and asserted that he was a *bona fide* purchaser for value of the automobile. On the trial of the case Young made a motion for a nonsuit at the conclusion of plaintiff's testimony. This motion was refused. At the conclusion of all the testimony, each party made a motion for a directed verdict. That of the defendant Young was denied. Plaintiff's motion was granted upon the ground that under the South Carolina Motor Vehicle Title Law, Sections 46-139 to 46-139.161, inclusive, of the 1960 Cumulative Supplement to the 1952 Code, title was the exclusive *indicia* of ownership and that defendant Young had never acquired title in accordance with the terms of this Act. Accordingly, the Court directed the jury to return a verdict for the plaintiff for the possession of the automobile or if possession could not be had, its value—$1,700.00. On this appeal Young contends that the Court erred in directing a verdict for the plaintiff and further erred in not granting his motion for a directed verdict.

The material facts are undisputed and may be summarized as follows:

Respondent is a wholesale dealer in automobiles at Darlington, South Carolina. At the times hereinafter men-

tioned, Stewart I. Harvin, Jr., was a retail dealer at Manning doing business as the Harvin Motor Company. Respondent's officers knew him well and had sold him automobiles over a long period of years. Some of them were paid for subsequent to delivery. On Wednesday, February 3, 1960, Harvin telephoned respondent's general office manager stating that he would like to buy two Volkswagens for immediate delivery and would come to Darlington the following day and pay for them. Respondent agreed to sell with this understanding. These Volkswagens, along with four others, had shortly before been acquired by respondent from a Philadelphia dealer who, at the time of sale, delivered Pennsylvania title certificates duly assigned to respondent.

In accordance with the foregoing arrangement, Harvin sent two drivers over to Darlington on Wednesday afternoon to bring the cars to Manning. According to respondent's testimony the title certificates to these two cars were not delivered at that time because the purchase price had not been paid. The general office manager testified that she "assumed" that Harvin would sell the cars "at some time" but had no idea he would undertake to do so before they were paid for. Harvin failed to make payment, as promised, on the day following delivery. Respondent's general office manager called him several times. On each occasion he promised to send the check immediately but failed to do so. Finally, on Monday, February 8th, she called Harvin who then stated he had sent the check the previous Saturday. However, no payment was ever made and on February 9th Harvin was committed to the State Hospital.

Appellant resided at Boykin in Sumter County. For several weeks he had indicated to Harvin that he was in the market for a Volkswagen. On Wednesday, February 3, 1960, Harvin telephoned him that he had that day acquired two Volkswagens. After some negotiations over the telephone, they agreed on a price. On Saturday, February 6th, appellant sent his wife to Manning to get the car, which was

then on display in Harvin's showroom. She delivered to Harvin a check for $1,779.25, representing the purchase price of $1,725.00, a sales tax 'of $51.75 and "license and title for car" amounting to $2.50, and received from him a bill of sale. She also signed an application for title which Harvin promised to send her along with the license tag as soon as they were received. The check was paid by the bank in due course.

Respondent's vice-president testified that he sold the car to Harvin as a used car, although his testimony on this point was somewhat evasive. Both appellant and his wife testified that they understood they were buying a "brand new car". However, in the view we take of the case, it is immaterial whether it was new or used.

Apparently being unable to obtain payment for the cars from any of the parties, this action in claim and delivery was commenced on February 27, 1960.

We think *Clanton's Auto Auction Sales, Inc. v. Harvin,* 238 S. C. 352, 120 S. E. (2d) 237, 239, decided since this case was tried, requires a reversal of the judgment below. That case involved the other Volkswagen purchased by Harvin from Clanton's on February 3, 1960. On the same day this Volkswagen was delivered to Harvin, he gave a mortgage on it to the Stephenson Finance Company to secure a loan of $1,625.00. On February 25, 1960, Clanton's Auto Auction Sales, Inc., brought an action against Harvin and the Stephenson Finance Company to obtain possession of this automobile. In that case Clanton's contended that since Harvin never acquired a registered title in compliance with the Motor Vehicle Title Act, he was not in a position to give a valid mortgage on the car. On the question of estoppel asserted by Stephenson Finance Company, Clanton contended that this doctrine could not be successfully invoked because it was incumbent upon anyone purchasing from Harvin or lending money to him to see that he possessed title. These contentions, as well as others advanced by Clanton,

were rejected by this Court and it was held that the claim of Stephenson Finance Company under its mortgage was prior to any claim of Clanton. The decision was based upon several grounds, one of which was that Clanton was estopped by its conduct to assert title against Stephenson's mortgage. In discussing estoppel, the Court said:

"It is plaintiff's (Clanton's Auto Auction Sales, Inc.) position that by the retention of all *indicia* of title all others, including Stephenson Finance Company, Inc., were placed on notice that Harvin did not have title to the car, and those dealing with him did so at their peril in that they were charged with the duty of requiring Harvin to furnish evidence of title to the vehicle in question. It must be remembered that all parties were aware of the nature of the others' business, that both Clanton's Auto Auction Sales, Inc., and Harvin were known automobile dealers engaged in the sale and financing of cars, and that this was known to Stephenson Finance Company, Inc. Plaintiff knew or should have known that Harvin, being a dealer, would in the normal course of business either finance or sell."

The only difference between the facts in the other case and those now before us is that in the former Harvin mortgaged one of the Volkswagens, while in the instant case he sold it. But this does not affect the legal result. Certainly an innocent purchaser for value is entitled to as much protection as a mortgagee. Counsel for respondent argue that in the other case the Court considered the bailment and certain recording statutes which they say were neither raised by appellant in this case nor presented to the Court below. Assuming this to be true, we think appellant's right to possession of this car may soundly be sustained under the doctrine of estoppel which admittedly was invoked in his answer.

There is a conflict of authority on the question of whether estoppel may be invoked by a person who purchases a motor vehicle without requiring the seller to produce and assign a certificate of title in accordance with the motor vehicle title

statutes. Some courts take the view that the terms of the statutes are mandatory and must be complied with to effect a valid transfer of title. They hold that estoppel may not be invoked to defeat the title of the registered owner, and that any person who purchases a motor vehicle without requiring the seller to exhibit and assign his title is guilty of negligence, and is not a *bona fide* purchaser. Among these decisions are: *Commercial Credit Corporation v. Smith,* 76 Nev. 345, 353 P. (2d) 905; *Deahl v. Thomas,* Tex. Civ. App., 224 S. W. (2d) 293; *Moberg v. Commercial Credit Corp.,* 230 Minn. 469, 42 N. W. (2d) 54. On the other hand, it is held in a number of jurisdictions that the title registration acts do not preclude application of the general principles of equitable estoppel. Among the cases so holding are: *L. B. Motors Inc. v. Prichard,* 303 Ill. App. 318, 25 N. E. (2d) 129; *Al's Auto Sales v. Moskowitz,* 203 Okl. 611, 224 P. (2d) 588; *Hunter v. Moore,* 38 Tenn. App. 533, 276 S. W. (2d) 754; *Weigelt v. Factors Credit Corp.,* 174 Pa. Super. 400, 101 A. (2d) 404; *Heaston v. Martinez,* 3 Utah (2d) 259, 282 P. (2d) 833; *Pacific Finance Corp. v. Foust,* 44 Cal. (2d) 853, 285 P. (2d) 632; *Motor Credit Corp. v. Woolverton,* 99 So. (2d) 286, 72 A. L. R. (2d) 334; *General Credit, Inc. v. Winchester, Inc.,* 196 Va. 711, 85 S. E. (2d) 201.

It should be pointed out that in some of the cases where the plea of estoppel was denied, the statute involved made any attempted transfer of title without compliance with its provisions fraudulent and void, while in a few others the statute under consideration expressly provided that waiver or estoppel could not operate against a person holding a valid certificate of title. Our Act is not so drastic. It merely provides that a transfer without compliance with its terms "is not effective." Section 46-139.52. We find nothing in it evidencing a legislative intent to abrogate the plea of equitable estopped. It was never contemplated that this statute which was obviously intended to prevent fraudulent transfer of cars should be applied so as to protect one whose conduct

has enabled another to commit a fraud. We think our holding with respect to estoppel in *Clanton's Auto Auction Sales, Inc. v. Harvin, supra,* 238 S. C. 352, 120 S. E. (2d) 237, is sound and should not be disturbed.

For a further discussion of the question of estoppel as applied to facts similar to those now presented, see *Ex parte Dort,* 238 S. C. 506, 121 S. E. (2d) 1.

It follows from the foregoing that the Court below should have refused respondent's motion for a directed verdict and should have granted appellant's motion upon the ground that respondent was estopped to assert title to this automobile as against him. In view of this conclusion, it is not necessary to consider appellant's further contention that Harvin, as a dealer, had ten days under Section 46-139.53 to acquire a certificate of title from respondent and within that period could make a valid transfer of the automobile without such certificate. Nor need we pass upon appellant's claim that by signing and leaving with Harvin the application for a title, together with the necessary fee, he did all that was required of him by the terms of the Act and that it was then the sole responsibility of Harvin to complete the application and mail same to the Highway Department, along with the last certificate of title duly assigned.

Respondent has been granted permission to criticize, and request a modification of, a certain statement in *Clanton's Auto Auction Sales, Inc. v. Harvin, supra,* which counsel say is an erroneous characterization of the nature and effect of a title certificate under the Act. We think this statement has been misconstrued by taking it out of context. Be that as it may, we have no occasion now to discuss the question as it has no bearing on the view we have taken of this case.

Judgment reversed and case remanded for entry of judgment in favor of appellant under Rule 27.

TAYLOR, C. J., and LEGGE, MOSS and LEWIS, JJ., concur.