Lawrence A. CLOUSE, and Employers Mutual Liability Insurance Company of Wisconsin, Plaintiffs,

v.

AMERICAN MUTUAL LIABILITY IN-SURANCE COMPANY, Defendant.

Civ. A. No. 8309.

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 22, 1964.

---

Henry B. Smythe, Charleston, S. C., for plaintiffs.

William H. Grimball, Jr., Charleston, S. C., for defendant.

HEMPHILL, Chief Judge.

Action seeks to establish liability in defendant under its garage liability policy for injuries and damages sustained by Lawrence A. Clouse in an automobile collision with one Freddy G. Munn. No triable issue of fact being presented, question arises on motion by defendant for summary judgment under Rule 56, Federal Rules of Civil Procedure.

On June 5, 1961 Munn went to Prothro Chevrolet, Inc., in Manning, South Carolina, where he was served by L. C. Prothro, Jr., Secretary and Treasurer of the corporation. At that time the corporation owned a 1956 Oldsmobile which it had previously sold to one Woodrow Way on April 27, 1960, but which had been repossessed, under a conditional sales contract, a month or six weeks before the Munn inquiry. Prothro allowed Munn to try out the car, and upon Munn's return, he was given title (State Highway Department Form 400 Revised), the old registration; Prothro executed an assignment and warranty of title to Munn; Munn paid some money, executed a conditional sales contract for the balance due. Prothro relinquished possession to Munn, gave him a self-addressed envelope to mail in the first payment, addressed an envelope to the State Highway Department. Form 402[1] of the South Carolina Highway Department was not filled out because Munn did not have the necessary information, but he was to obtain the information and send in the various forms, had clipped a dollar bill with the papers and put papers and the money in the envelope addressed to the State Highway Department. The papers were never mailed.

On June 7, 1961, the Oldsmobile, driven by Munn, was in collision with a motor vehicle driven by plaintiff Clouse, an employee of Bird & Son, Inc., whose compensation carrier, as subrogee, joins as plaintiff. Clouse filed suit against Munn in the United States District Court for the Eastern District of South Carolina, recovered judgment for Twenty Seven

---

1. Certificate of insurance required by § 46–750.13, South Carolina Code of Laws 1962.

Thousand Five Hundred ($27,500) Dollars, plus Ninety Dollars and Seventy ($90.70) Cents costs. Judgment on the verdict was entered but the Sheriff of Charleston County advised he could not collect because Munn had no assets. Thereafter plaintiffs entered this suit alleging ownership of the vehicle in the corporation, permission or consent to Munn, and liability coverage by defendant under its policy. Prior to trial of the damage suit plaintiffs notified defendant it would be expected to respond for any judgment recovered.

Plaintiffs claim responsibility rests upon the insurer of Prothro under that clause of the policy [2] known as Coverage D, which reads as follows:

"COVERAGE D—PROPERTY OF OTHERS IN CHARGE OF NAMED INSURED TO PAY on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property of others of a kind customarily left in charge of garages, including the loss of use thereof, caused by accidental collision or upset of such property while in charge of the named insured in connection with his automobile sales agency, repair shop, service station, storage garage or public parking place operations."

Plaintiffs contend there was a retention of ownership in Prothro and thus responsibility by the corporation because of failure to comply with certain provisions of Article 2 of Chapter 3 of Title 46 [3] of the South Carolina Code of Laws for 1962, as amended. Section 46–150.15 provides:

"How voluntary transfer carried out; when transfer effective.—

"If an owner, manufacturer or dealer transfers his interest in a vehicle other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to transferee in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and assignment to be mailed or delivered to the transferee or to the Department.

"Except as provided in § 46–150.16, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and application to be mailed or delivered to the Department.

"Except as provided in § 46–150.16, and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with."

Section 46–150.16 provides:

"Same; When dealer purchases vehicle for resale.—

"If a dealer buys a vehicle and holds it for resale and procures the certificate of title from the owner within ten days after delivery to him of the vehicle, he need not send the certificate to the Department, but, upon transferring the vehicle to another person other than by the creation of a security interest, shall promptly execute the assignment and warranty of title by a dealer, showing the names and addresses of the transferee and of any lienholder holding a security interest created or reserved at the time of the resale and the date of his security agreement, in the spaces provided therefor on the certificate or as the Department prescribes, and mail or

---

2. Before the Court was a certified copy of American Mutual Liability Insurance Company "Automobile Garage Liability Policy No. AG 17492" issued to Prothro Chevrolet Co., covering the period January 1, 1961 to January 1, 1962.

3. Title 46 of the South Carolina Code deals with motor vehicles, Chapter 3 thereof deals with Protection of Titles to Motor Vehicles, etc.; Article 2 generally with certificates of title.

deliver the certificate to the Department with the transferee's application for a new certificate."

Section 46–150.17 provides:

"Same; issuance of new certificate.—

"The Department, upon receipt of a properly assigned certificate of title, with an application for a new certificate of title, the required fee and any other documents required by law, shall issue a new certificate of title in the name of the transferee as owner and mail it to the owner named in it or his legal representative."

In addition, reliance is placed upon Section 46–137 et seq. of the South Carolina Code:

"Requiring proof of financial responsibility in lieu of additional fee.—

"The State Highway Department may require that any person applying for licensing and registration of a motor vehicle shall certify under the penalties set forth in § 46–138.7 whether or not each such motor vehicle is an insured motor vehicle as defined in § 46–135, or the Department may, in its discretion, require that such person (a) produce as evidence of financial responsibility a certificate, in form prescribed by the Department, of insurance or self-insurance complying with the requirements of § 46–709, (b) shall have given bond or delivered the cash as securities as provided in §§ 46–750 and 46–750.1, respectively or (c) pay the fee prescribed in § 46–136."

Also Section 46–750.13 provides:

"Bodily injury and property damage limits required.—

"No policy or contract of bodily injury liability insurance or of property damage liability insurance covering liability arising from the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle then principally garaged or principally used in this State, unless it contains a provision insuring the person named therein and any other person, as insured, using any of those motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle, as follows: Ten thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident and five thousand dollars because of injury to or destruction of property of others in any one accident."

The issue narrows, therefore, and this Court must determine whether compliance with the statutory provisions of title and insurance requirements for motor vehicles determine ownership and/or insurance coverage and liability.

When Lynch v. United States Branch, Gen'l Accident Fire and Theft Assurance Corp., Ltd.[4] was decided, no South Carolina decision was available for guidance or interpretation.[5] The facts are similar. In Lynch, one Alexander went to one Edwards, insured with defendant, to trade; he executed a conditional sales contract, took possession of the Chevrolet in question, left his Ford with Edwards, agreeing to return the next day at Noon bring-

---

4. 327 F.2d 328 (4th Cir. 1964).

5. The Court, per curiam stated: "Reluctant as we are to construe a South Carolina statute which has not been construed by the Supreme Court of that state, we are compelled to do so." 327 F.2d at 332.

ing with him the title certificate to the Ford and enough money to make up the $457.00 cash down payment. The wreck which precipitated the award for damages occurred the same evening. Lynch effected recovery in suit against Alexander, and suit was instituted to determine liability as between Lynch's insurer, American Casualty Co., co-plaintiff, and Edward's insurer, defendant. The District Court held defendant dealer's insurer primarily liable, which decision was reversed on appeal. At issue was the question of ownership, the trial court holding that equitable ownership remained in Edwards and his insurer was primarily liable. In reversing the District Court the Court of Appeals applied the proviso set forth in the last paragraph of Section 46–150.15,[6] centered its decision on "ownership" as between Alexander the purchaser and Edwards the dealer, stating plainly "It does not appear that the rights of third-party insurance carriers were intended to be governed by this statute."[7] In finding Alexander the true owner, and defendant as insurer not liable because of lack of ownership in Edwards, the Court went on to state:

> "Alexander's testimony is evasive and somewhat contradictory. He acknowledged signing the conditional sales contract but also said he "never traded". But, under the parole evidence rule, that testimony is unavailing to contradict the conditional sales contract signed by him."

We find a similarity to the case at bar, the facts here being stronger. In addition to the conditional sales contract Munn had other papers. Munn owned the 1956 Oldsmobile at the time of the wreck.

This Court is fortunate in that the Supreme Court of South Carolina recently filed a lucid opinion by Chief Justice Taylor in Bankers Ins. Co. of Pa. v. Griffin,[8] 137 S.E.2d 785. In that case one Merdy Griffin wished to purchase a 1960 Pontiac and agreed to a trade with a dealer, signed a credit application which was found unacceptable. Merdy's brother, Henry Griffin, was contacted, agreed to sign an accommodation note for his brother; he had acceptable credit. Title was issued in Henry's name and so registered with the South Carolina Highway Department. Merdy Griffin went to the agent for Bankers Insurance Company and attempted to procure an endorsement of his policy[9] to include the 1960 Pontiac, was advised to place the insurance in Henry's name and told to have Henry contact Nationwide, Henry's insurer, to obtain inclusive coverage. Henry was advised by his Nationwide agent that since Merdy was the real owner there was no reason why he should not be issued the endorsement. Merdy went to Smith Agency, displayed the bill of sale, and paid $11.68 differential in premium for the endorsement. On that same day, June 8, 1963, the Pontiac was involved in an accident; two days later Bankers issued the endorsement on the 1960 Pontiac. The action for declaratory judgment was heard before the County Court which found that Merdy Griffin was the "owner" under the circumstances and that Bankers had not proved a material misrepresentation and, therefore, was liable under the circumstances. In affirming the opinion below, the Court said:

> "It is further contended that the Nationwide policy affords coverage under the facts of this case as Henry D. Griffin not only had title to the 1960 Pontiac but, in addition, had obligated himself to pay for the same by signing the note and mortgage. The Nationwide policy provides under the automatic insurance clause

6. Supra, "Except * * * as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with."

7. Lynch v. United States Branch, Gen'l Accident Fire and Theft Assurance Corp., Ltd., supra at 332.

8. Opinion No. 18252, filed August 10, 1964. See Smith's advance opinions, filed during week of August 15, 1964.

9. Bankers had issued a policy on the 1955 Pontiac Merdy traded in on the 1960 model.

that coverage is afforded for no more than 30 days to a motor vehicle, ownership of which is acquired by the policyholder.

"In the case of Robinson v. Georgia Casualty & Surety Co., 235 S.C. 178, 110 S.E.2d 255, it was said in regard (to) a similar clause providing for automatic coverage on a newly acquired automobile that such clause "specifically, and in explicit language, requires that to be covered as a newly acquired automobile the automobile must be one acquired by the named insured. In other words to be covered as a newly acquired automobile, the vehicle must be one in which the named insured not only has an insurable interest—he must own the automobile." See 34 A.L.R. 2d 936.

"Conceding the fact that Henry D. Griffin had an insurable interest in the 1960 Pontiac, the Nationwide policy affords no coverage under the "automatic insurance" clause as Henry was not the true owner of said vehicle."

This case effectively nullified the philosophy that ownership, as between the parties, is dependent on statutory compliance as to registration, certification, or insurance. It reiterates the philosophy of the Lynch case [10] which, in turn, cites Frazir v. Hilliard,[11] a South Carolina case decided in 1848.

This decision is entirely consistent wtih the reasoning in Clanton's Auto Auction Sales, Inc. v. Harvin, 238 S.C. 352, 120 S.E.2d 237, which is not only authority for a presumption of ownership in the person having possession of the personal property, but the Court there also refused to preempt the South Carolina Bailment Statute [12] with statutes governing motor vehicle registration, title, etc., even though plaintiff dealer in that case held all indicia of title, a mortgagee who established recorded lien was declared entitled to priority. In keeping with this philosophy, had Munn, in this case, after executing the conditional sales contract to Prothro, in turn mortgaged to another before Prothro recorded, the later mortgage, if recorded first, would be the first lien, regardless of the statutes relied on by plaintiff and/or others to defeat Munn's claim of ownership.

Clanton's Auto Auction Sales, Inc. v. Young, 239 S.C. 250, 122 S.E.2d 640, discusses Section 46–139.52 of the South Carolina Code of Laws for 1952, as amended.[13] It will be seen that this is the same language as contained in Section 46–150.15 of the 1962 South Carolina Code, which statute is at issue here. Clanton sold to one Harvin who in turn sold to defendant; Harvin delivered title, but Clanton did not. The Court, holding Young an innocent purchaser for value (Clanton recording no reservation) refused to allow the use of the title statutes to effect an equitable estoppel of Young's claim, stating:

"It should be pointed out that in some of the cases where the plea of estoppel was denied, the statute involved made any attempted transfer of title without compliance with its provisions fraudulent and void, while in a few others the statute under consideration expressly provided that waiver or estoppel could not op-

---

10. Supra.

11. 2 Strob. 309, 317, which states: "The rule of law is, that when there is an immediate sale, and nothing remains to be done by the seller, *as between him and the buyer*, the property in the thing sold vests in the buyer—and all the consequences resulting from the vesting of the property, follows; as, if the property be destroyed, the loss must fall on the buyer." (Emphasis added.)

12. See § 57–308, S.C.Code of Laws 1962.

13. Enacted by the State Legislature in 1957 and which provides: "Time transfer by owner effective. Except as provided in § 46–139.53, and as between the parties, a transfer by an owner is not effective until the provisions of §§ 46–139.50 and 46–139.51 have been complied with."

erate against a person holding a valid certificate of title. *Our Act is not so drastic.* It merely provides that a transfer without compliance with its terms "is not effective." Section 46–139.52. We find nothing in it evidencing a legislative intent to abrogate the plea of equitable estoppel. It was never contemplated that this statute which was obviously intended to prevent fraudulent transfer of cars should be applied so as to protect one whose conduct has enabled another to commit a fraud. We think our holding with respect to estoppel in Clanton's Auto Auction Sales, Inc. v. Harvin, supra, 238 S.C. 352, 120 S.E.2d 237, is sound and should not be disturbed." (Emphasis added.)

To the same import is Ex Parte Dort. v. Wingard, 238 S.C. 506, 121 S.E.2d 1. Substantial justice demands that negligence may not be practiced and fraudulent results salvaged under a protective umbrella of statutory direction of purely ministerial actions. Since the Bankers Insurance case[14] is authority for the proposition that a certification of title is not conclusive evidence of ownership, this Court is bound to reason that lack of title is not conclusive that ownership is in another.

■ Plaintiff here seeks to premise his claim, in part, on the alleged "permission" given to Munn to use the car. If he was owner, and this Court is bound to so hold, he would not need, in fact could not receive, permission from one who lost authority with transfer of ownership. Following then the reasoning in Utica Mutual Ins. Co. v. Travelers Ins. Co.,[15] 335 F.2d 573:

"The jury should have been plainly and carefully instructed that the permission granted by Mrs. Killinger in April should be disregarded by them, unless, under all of the circumstances, they should find that at that time and place Lincoln reason-

ably understood that he had permission then to use the automobile, that his use was for the purpose of trying out the vehicle and not for the purpose of abandoning his wife, friends and guest for the remainder of the night."

■ The Court finds here no permission of such nature as to establish, or support, plaintiff's contention. The fact that title papers were not complete raises no presumption of permission. To the same import is Wicker v. National Surety Corporation, 330 F.2d 1009, (4th Cir. 1964). The decision held that where an automobile dealer, pursuant to custom and agreement, with purchaser of used automobile, undertook to complete transfer papers and deliver papers, including reassigned title certificate of former owner, to Division of Motor Vehicles for issuance of new title certificate to purchaser, but because of holiday closing of office, this was not completed until after automobile accident while automobile was operated by purchaser, dealer was no longer owner but was merely acting as purchaser's agent, and hence accident was not covered by dealer's liability policy on theory of permissive user by purchaser.

The case is authority for the acceptance by the United States Court of Appeals of Virginia's interpretation of its statute. The Court takes this as a welcome mandate to accept South Carolina's interpretation of the effect of its statutes of automobile registration, certification, title and insurance on the question of ownership and resulting liability insurance responsibility.

The reasoning in Wicker may well be applied here:

"There was no doubt among the parties as to the owner of this automobile when it was being operated by White on December 24. What doubts might be derived from Virginia's statute were resolved in accordance with the intention and understanding of the parties when the

14. Supra, See footnote 8.

15. U.S.Ct.App., 4th Cir., July 31, 1964 (No. 9192).

seller held the properly assigned title certificate for the sole purpose of filing it, and had an unequivocal duty, as the buyer's agent, to do that.

"Since the sale of the vehicle was executed, not executory, White's use of the automobile was not permissive and the omnibus clause of the dealer's liability insurance did not extend the coverage of that insurance to White." 330 F.2d 1009, 1013, 1014.

This Court feels that these interpretations make it clear that while the statutes relied upon by plaintiff, as used, abused, neglected or avoided, may have probative value on the question of ownership, that they present no conclusive evidence of such, and their use as a vehicle to determine insurance liability should always be surveyed in the light of surrounding circumstances. Not in any degree negating the wisdom of Section 46–137 of the S.C.Code of Laws 1962, and saluting its purpose, the failure of the true owner to comply with its mandates should not be used to impute liability to an insurer innocent to the transaction, and removed from its periphery of responsibility by the change in ownership. This Court finds that the statute quoted,[16] later included,[17] intended a limitation "to the parties". Here the parties are Munn and Prothro. Defendant is not a "party", and hence, not liable.

The United States Court of Appeals for the Fourth Circuit has set the guidelines of statutory construction for this Court. No statute should be so construed in such a way as to make it unworkable if any other construction is possible,[18] and all laws should receive a sensible construction, and general terms not be so limited in their application as not to lead to injustice, oppression or an absurd consequence.[19] This Court has attempt-

ed to follow these rules in the application of the statutes plaintiff relies on here. The South Carolina Supreme Court has set the guidelines for construction of statutes by its Courts,[20] and there exists no conflict between Federal and State treatment of interpretation. This is reflected in this Court's adoption of the construction and reasoning in Bankers Insurance Co. of Pa. v. Griffin, discussed above.

Defendant is entitled to summary judgment.

And it is so ordered.

16. See Note 6, supra.

17. Section 46–150.15, S.C.Code 1962, noted supra.

18. N. L. R. B. v. Greensboro Coca Cola Bottling Co., 180 F.2d 840.

19. McNair v. C. I. R., 250 F.2d 147.

20. See Day v. Day, 216 S.C. 324, 58 S.E. 2d 83; Stephens v. Hendricks, 226 S.C. 79, 83 S.E.2d 634.