Norman P. HANNA and C. Eugene Donnelly, Executors of the Estate of Blanche D. Hanna, Deceased, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

J. Ed HANNA, Administrator, Estate of Norman P. Hanna, Deceased, Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY and State Farm Mutual Automobile Insurance Company, Defendants.

Civ. A. Nos. 8008, 8417.

United States District Court
E. D. South Carolina,
Florence Division.

Sept. 12, 1964.

Nettles & Thomy, Lake City, S. C., and Lewis C. Trice, Columbia, S. C., for plaintiffs Norman P. Hanna and C. Eugene Donnelly.

Yarborough & Nettles, Florence, S. C., for defendant State Farm Mut. Automobile Ins. Co.

---

Connor & Connor, Kingstree, S. C., for plaintiff J. Ed Hanna.

Yarborough & Nettles, Florence, S. C., Lewis C. Trice, Columbia, S. C., and E. LeRoy Nettles, Lake City, S. C., for defendants St. Paul Fire & Marine Ins. Co. and State Farm Mut. Automobile Ins. Co.

HEMPHILL, Chief Judge.

Actions to determine liability, if any, of defendant insurance companies, on policies admittedly issued, consolidated by agreement for purposes of non jury trial by the court. Heard August 13, 14, 1964 at Florence, South Carolina.

### FINDINGS OF FACT

1. The plaintiff, C. Eugene Donnelly, surviving executor of the Estate of Blanche D. Hanna, is a citizen and resident of the State of South Carolina. The defendant State Farm Mutual Automobile Insurance Company is a corporation organized and existing under the laws of the State of Illinois and is for the purposes of this action a citizen of the State of Illinois.

2. On September 5, 1961, Glennie S. Miller, owner of a 1953 Ford automobile bearing Serial No. B35617048, applied for an automobile liability insurance policy with the defendant through its agent John McCormick at Georgetown, South Carolina. Subsequently the defendant issued its automobile liability policy No. 613 423–C05–40 in which Glennie S. Miller was the named insured and the said 1953 Ford was the described automobile. The policy was voluntarily entered into between the defendant State Farm Mutual Automobile Insurance Company and Glennie S. Miller and was not a certified policy under the terms of the Safety Responsibility Act of South Carolina.

The policy contained the following provisions:

### "INSURING AGREEMENT I—THE OWNED AUTOMOBILE

"COVERAGES A and B—(A) Bodily Injury Liability and

\* \* \* \* \* \*

"(1) To pay all damages which the insured shall become legally obligated to pay because of (A) bodily injury sustained by other persons \* \* \* caused by accident arising out of the ownership, maintenance, or use, including loading or unloading of the owned automobile.

### "DEFINITIONS—INSURING AGREEMENTS I AND II

"*Named Insured*—means the individual so designated in the declarations and also includes his spouse, if a resident of the same household.

"*Insured*—under coverages A \* \* \* the unqualified word "insured" includes (1) the named insured.

\* \* \* \* \* \*

"*Owned Automobile*—means the private passenger automobile \* \* \* described in the declarations and \* \* \* a newly acquired automobile.

\* \* \* \* \* \*

"*Newly Acquired Automobile*—means an automobile, ownership of which is acquired by the named insured if (1) it replaces an automobile owned by the named insured and covered by this policy \* \* \* and (2) the named insured notified the company within 30 days following such delivery date.

### "EXCLUSIONS—INSURING AGREEMENTS I AND II

"This insurance does not apply under:

\* \* \* \* \* \*

"(b) coverages A and B, to liability assumed by the insured under any contract or agreement.

### "POLICY CONDITIONS—APPLICABLE TO ALL COVERAGES UNLESS OTHERWISE NOTED

\* \* \* \* \* \*

"2. *Action Against Company.* No action shall lie against the company:

"(a) Unless as a condition precedent thereto there shall have been full compliance with all terms of this policy.

"(b) Under coverages A \* \* \* until the amount of the insured's obligation

to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured.

\* \* \* \* \* \* "

3. On September 7, 1961, Glennie S. Miller registered the 1953 Ford automobile for the registration year November 1, 1961, to October 31, 1962, as an insured automobile and filed Form 402 of the South Carolina Highway Department on which he indicated that the defendant had issued a binder to him. Subsequently an amended certification was made indicating that the defendant was the insurer and that the policy number was 613–423–CO5–40.

4. The South Carolina Highway Department forwarded a copy of the 402 form to the defendant for verification of coverage.

5. On September 9, 1961, Glennie S. Miller purchased a 1960 Plymouth automobile from Manning Camlin, an automobile dealer in Georgetown, South Carolina, and traded in the 1953 Ford, Serial No. B35617048, as part of the downpayment. Two days later, on September 11, 1961, Glennie S. Miller executed the South Carolina Certificate of Title in blank and delivered it with the Registration Card to Manning Camlin.

6. On September 11, 1961, Manning Camlin sold said 1953 Ford, along with other vehicles, to Wade Camlin, another automobile dealer in Georgetown, South Carolina, and Manning Camlin delivered to Wade Camlin the Certificate of Title, still endorsed in blank, and the Registration Card.

7. On September 18, 1961, Glennie S. Miller notified the defendant's agent McCormick of the sale of the said 1953 Ford and of the acquisition of the 1960 Plymouth and on that date agent McCormick filled out a transfer application which was forwarded to the defendant. Subsequently the defendant issued its Replacement Policy No. 615 855–CO5–40 which was identical to the policy heretofore referred to except that the number was different and the described automobile was the 1960 Plymouth rather than the 1953 Ford. The expiration date was the same and no charge was made to Glennie S. Miller for the new policy.

8. At the time that the transfer application was submitted to the defendant by the agent McCormick on behalf of Glennie S. Miller the defendant did not notify the South Carolina Highway Department of the transaction whereby it substituted the 1960 Plymouth for the said 1953 Ford, nor did it advise the department of the fact that it issued Replacement Policy 615.

9. On or about September 19, 1961, Wade Camlin sold the said 1953 Ford, along with other vehicles, to one George W. "Pappy" Martin. Martin took possession of the automobile and transferred it to Hemingway, South Carolina. At the time Wade Camlin delivered to him the Certificate of Title and the Registration Card.

10. After receiving said 1953 Ford automobile, Martin did some work on it in order to resell it.

11. After the automobile was fixed up and on or about September 30 in the late afternoon Martin negotiated a sale of the said 1953 Ford to one Willie H. McGee for Three Hundred ($300.00) Dollars and gave his receipt to McGee for the downpayment of Forty ($40.00) Dollars, leaving a balance of Two Hundred Sixty ($260.00) Dollars still owing.

12. Martin was unable to complete the paperwork on Saturday afternoon; therefore, on the following Monday he carried the Certificate of Title and Registration Card to a Notary. The Notary filled in the Certificate of Title and an affidavit of sale form which Martin executed. On the following Saturday Martin attempted to see McGee in order to deliver the title instruments and collect the balance, but he was unable to locate him. On October 8, 1961, McGee, while driving the said 1953 Ford automobile, was involved in an automobile accident. The other cars involved were a 1953 Ford owned and being driven by one George McCrea, Jr., and a 1957 Chevrolet automobile owned by Blanche D. Hanna, who was a passenger therein, and which was

being driven by her husband, Norman P. Hanna.

13. The defendant St. Paul Fire and Marine Insurance Company had issued its Policy No. 239AD9741 insuring the 1957 Chevrolet automobile of Blanche D. Hanna and said policy provided uninsured motorist coverage.

14. On July 12, 1962, copies of the summons and complaint in actions entitled Norman P. Hanna and C. Eugene Donnelly, Executors of the Estate of Blanche D. Hanna, deceased, Plaintiff, vs. George McCrea, Jr., and Willie H. McGee, Defendants, and Norman P. Hanna, Plaintiff, vs. George McCrea, Jr., and Willie H. McGee, Defendants, were forwarded by plaintiffs' counsel, in each case, Conner & Conner of Kingstree, South Carolina, to the defendant, C/O John McCormick Insurance Agency, Georgetown, South Carolina. At that time plaintiffs' counsel informed the defendant that it "carried insurance coverage on the 1953 Ford involved in" the accident of October 8, 1961, "which was being driven by Willie H. McGee and belonged to one Glennie S. Miller, your insured, at the time of the accident." These papers were returned and on July 16 the original letter to McCormick, together with the summons and complaint in each case, were forwarded to the defendant at its office in Jacksonville, Florida.

15. On or about March 21, 1964, the action entitled J. Ed Hanna, Executor of the Estate of Norman P. Hanna, deceased, Plaintiff, vs. George McCrea, Jr., and Willie H. McGee, Defendants, came on for trial in the Court of Common Pleas for Williamsburg County, J. Ed Hanna having been substituted as plaintiff due to the death of Norman P. Hanna. After trial on the merits the jury returned a verdict in favor of the plaintiff against the defendant Willie H. McGee, only, in the sum of One Thousand Five Hundred ($1,500.00) Dollars actual damages and Ten Thousand ($10,000.00) Dollars punitive damages.

16. St. Paul Fire and Marine Insurance Company had uninsured motorist coverage on the 1957 Chevrolet automobile owned by Blanche D. Hanna and being driven by Norman P. Hanna at the time of the collision of October 8, 1961. It provided Willie H. McGee with defense counsel at the March 1964, trial.

17. On November 28, 1963, the action entitled Norman P. Hanna and C. Eugene Donnelly, Executors of the Estate of Blanche D. Hanna, deceased, Plaintiff, vs. George McCrea, Jr., and Willie H. McGee, Defendants, came on for trial in the Court of Common Pleas for Williamsburg County. At that time counsel for the plaintiff, Conner & Conner, R. E. Harrell, Attorney at Law of Kingstree, South Carolina, as counsel for George McCrea, Jr., and Nettles & Thomy as counsel for Willie H. McGee entered into an agreement or compromise settlement whereby it was agreed that a jury would be sworn and directed by the Court to find a verdict in favor of the plaintiff against the defendant Willie H. McGee only in the sum of Ten Thousand ($10,000.00) Dollars actual damages. It was agreed at that time that the carrier for McCrea would contribute Three Thousand ($3,000.00) Dollars to the payment of the judgment and that St. Paul Fire and Marine Insurance Company would pay Seven Thousand ($7,000.00) Dollars of the verdict. Subsequently the agreement was carried out and the plaintiffs executed an outright release to George McCrea, Jr., and executed what is known as an uninsured motorist release to St. Paul Fire and Marine Insurance Company. There has been no actual trial of this action on its merits.

18. St. Paul Fire and Marine Insurance Company brings action in the name of the named plaintiffs in an effort to recover the funds it has paid as aforesaid pursuant to the terms of the uninsured motorist release.

## CONCLUSIONS OF LAW

Plaintiffs right to recover against State Farm Mutual Automobile Insurance Company could not be justified unless, at the time Willie H. McGee had the admitted accident of October 8, 1961, Glennie S. Miller was the owner of the 1953 Ford automobile McGee was driv-

ing, and McGee had permanent use of said vehicle.

Plaintiffs contend retention of ownership, and thus responsibility, by Miller because of failure to comply with certain provisions of Article 2 of Chapter 3 of Title 46 [1] of the South Carolina Code of Laws for 1962, as amended. Section 46–150.15 provides:

"How voluntary transfer carried out; when transfer effective.—If an owner, manufacturer or dealer transfers his interest in a vehicle other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to transferee in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and assignment to be mailed or delivered to the transferee or to the Department.

"Except as provided in § 46–150.16, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and application to be mailed or delivered to the Department.

"Except as provided in § 46–150.16, and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with. (1957 (50) 595.)"

Section 46–150.16 provides:

"Same; when dealer purchases vehicle for resale.—If a dealer buys a vehicle and holds it for resale and procures the certificate of title from the owner within ten days after delivery to him of the vehicle, he need not send the certificate to the De-

partment, but, upon transferring the vehicle to another person other than by the creation of a security interest, shall promptly execute the assignment and warranty of title by a dealer, showing the names and addresses of the transferee and of any lienholder holding a security interest created or reserved at the time of the resale and the date of his security agreement, in the spaces provided therefor on the certificate or as the Department prescribes, and mail or deliver the certificate to the Department with the transferee's application for a new certificate. (1957 (50) 595.)"

Section 46–150.17 provides:

"Same; issuance of new certificate.—The Department, upon receipt of a properly assigned certificate of title, with an application for a new certificate of title, the required fee and any other documents required by law, shall issue a new certificate of title in the name of the transferee as owner and mail it to the owner named in it or his legal representative. (1957 (50) 595.)"

In addition, they place reliance on Section 46–137 et seq. of the South Carolina Code [2] and on Section 46–750.13 which provides:

"Bodily injury and property damage limits required.—No policy or contract of bodily injury liability insurance or of property damage liability insurance covering liability arising from the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle then principally garaged or principally used in this State, unless it contains a provision insuring the person named therein

[1]. Title 46 of the South Carolina Code deals with motor vehicles, Chapter 3 thereof deals with Protection of Titles to Motor Vehicles, etc., Article 2 generally with certificates of title.

[2]. The provision of 46–137 et seq., apply to uninsured motorists.

and any other person, as insured, using any of those motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle, as follows: Ten thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident and five thousand dollars because of injury to or destruction of property of others in any one accident. (1952 (47) 1853; 1959 (51) 567.)"

Bankers Ins. Co. of Pa. v. Griffin [3], 137 S.E.2d 785, is authority for the reasoning that *as between the parties,* compliance with statutory directions as to title and insurance is not necessary to transfer ownership. The Act of Miller in delivering possession of the 1953 Ford to Manning Camlin [4] together with the execution of the South Carolina Certificate of Title in blank and the Registration card, effectively and positively divested Miller of ownership. The fact that agent McCormick of State Farm Mutual Automobile Insurance Company took action to have issued Replacement Policy No. 615 855–CO5–40 is further proof of the lack of insurance coverage or contract as to the 1953 Ford.

■ Lynch v. United States Branch, General Accident Fire and Theft Insurance Corp., Ltd.[5] is Fourth Circuit authority for this Court to hold that the statutes relied on by plaintiff to recover of defendant State Farm are not sufficient.[6] Since Miller was not the owner on October 8, 1961, no liability attaches.[7] Such reasoning is consistent with that in Clanton's Auto Auction Sales v. Harvin, 238 S.C. 352, 120 S.E.2d 237; Clanton's Auto Auction Sales v. Young, 239 S.C. 250, 122 S.E.2d 640; and Ex Parte Dort, 238 S.C. 506, 121 S.E.2d 1.

The fact that title papers were not complete in McGee raises no presumption of retention of ownership in Miller or permission from Miller to McGee if there could be reasoned any ownership in Miller. There was no testimony in the record that McGee (or for that matter any others in the chain of transfers) considered the 1953 Ford to be Miller's after he had parted with it to Camlin about a month before the accident.

Having reached the conclusions that Glennie S. Miller was not the owner of the 1953 Ford at the time of the collision and that Willie H. McGee was not insured at that time by a policy of the defendant State Farm Mutual Automobile Insurance Company and that he was not using said 1953 Ford with the permission of Glennie S. Miller and that there had been no cancellation or other termination of coverage under State Farm's policies, it became necessary to pass upon the liability of the defendant St. Paul Fire and Marine Insurance Company.

■ The coverage afforded by the Uninsured Motorist Protection of St. Paul's policy provided pursuant to the requirements of the Uninsured Motorist Statute does not extend to punitive damages. Laird v. Nationwide Insurance Company, 243 S.C. 388, 134 S.E.2d 206.

---

3. Filed August 10, 1964. Opinion by Chief Justice Taylor of the South Carolina Supreme Court.

4. See Finding of Fact #5, supra.

5. 327 F.2d 328 (4th Cir. 1964).

6. The court said: "It does not appear that the rights of third party insurance carriers were intended to be covered by this [46–150.15 S.C.Code, 1962] statute".

7. In Clouse v. American Mutual Liability Ins. Co., USDC Eastern Dist. of S. C., Charleston Division, 232 F.Supp. 1010, this court, in a similar decision, followed Bankers Ins. and Lynch cases. Also cited was Frazer v. Hilliard, 2. Strob. 309, 317.

**516**

Having made the foregoing Findings of Fact and having reached the Conclusions of Law thereon, it is

Ordered that the plaintiff have judgment against the defendant St. Paul Fire and Marine Insurance Company in the sum of One Thousand Five Hundred ($1,500.00) Dollars actual damages, and, it is

Further ordered and decreed that the defendant State Farm Mutual Automobile Insurance Company is under no obligation to the plaintiff or any other person, firm, or corporation under the policy referred to in the complaint or introduced in evidence by reason of the automobile collision which occurred on October 8, 1961, on Highway 521 about eight (8) miles west of Andrews, South Carolina, in which a 1953 Ford automobile being driven by one Willie H. McGee was involved.

And it is so ordered.