**AMERICAN SURETY COMPANY OF NEW YORK, Appellant,**

v.

**Harvey S. GOLD and Earl O. Dearmore, Appellees.**

**No. 8225.**

United States Court of Appeals Tenth Circuit.

Sept. 29, 1966.

Rehearing Denied May 18, 1967.

H. E. Jones, Wichita, Kan. (A. W. Hershberger, Richard Jones, Wm. P. Thompson, Jerome E. Jones, Robert J. Roth, William R. Smith, Robert J. O'Connor, Wichita, Kan., with him on brief), for appellant.

Davis S. Carson, Wichita, Kan. (Clarence R. Sowers, John W. Sowers, James P. Johnston, Wichita, Kan., with him on brief), for appellee Harvey S. Gold.

G. Leroy Warner, Wichita, Kan. (Laurence S. Holmes, T. L. O'Hara, Wichita, Kan., with him on brief), for appellee Earl O. Dearmore.

Before MURRAH, Chief Judge, PHILLIPS and HILL, Circuit Judges.

MURRAH, Chief Judge.

This garnishment proceedings brings squarely to issue the question of an insurer's liability in the state of Kansas for a punitive damage judgment on a jury verdict against its insured.

The policy bound the American Surety Company of New York

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease * * *

"B. injury to or destruction of property * * *

"arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy * * *."

In a personal injury suit in the Kansas federal court appellee Harvey Gold recovered a judgment against the insured-appellee Earl Dearmore in the amount of $841.54 for compensatory damage and $10,000 punitive or exemplary damage based upon an allegation of his gross and wanton negligence in the operation of an automobile.

The company acknowledged liability for compensatory damages, but denied any liability for the punitive damages on the grounds (1) that punitive damages were not within the coverage of the pol-

icy, and (2) if so, the contract insures against damages levied to punish and deter and, as such, is contrary to the public policy of the state of Kansas, hence unenforceable. American Surety appeals from the garnishment judgment for the full amount of the negligence judgment.

On the issues involved the trial court reasoned that since the policy did not expressly exclude liability for punitive damages and made no distinction between kinds of damages to be covered, the contract was at most ambiguous and should, therefore, be construed in favor of the insured to spell coverage. The court further reasoned that "The trend of decisions indicates clearly * * * that it is not against public policy to insure against punitive damages. It has been done in a good many jurisdictions."

Kansas has not directly spoken on either of the points involved, and we are under the necessity of forecasting what the Kansas court will say when it does speak. There is a sharp division of respectable authority on both points. On the coverage question the sister states of Missouri and Colorado have denied coverage under indistinguishably similar policies for the reason that such policies cover only damages for bodily injury and property damage, and punitive damages being for punishment and deterrence are not within that category. Crull v. Gleb, Mo.App., 382 S.W.2d 17; Universal Indemnity Co. v. Tenery, 96 Colo. 10, 39 P.2d 776. On the other hand, the Tennessee, South Carolina and other courts have found coverage on the ground that the language "all sums which the insured shall become legally obligated to pay because of bodily injury or property damage" on its face covers punitive damages, and that a reasonable person in the position of the insured would so construe his policy. Lazenby v. Universal Underwriters Insurance Company, Tenn., 383 S.W.2d 1, and cases cited; Carroway v. Johnson, 245 S.C. 200, 139 S.E.2d 908; 7 Appleman on Insurance § 4312, p. 129; 63 Col.L.R. 944.

Inasmuch as we are convinced from the weight and logic of the case law that Kansas would hold a policy insuring against punitive damage awards to be violative of the public policy of that state, we need not resolve the troublesome question of coverage. For the purposes of this case, we will assume that the policy does cover such awards.

With great respect we cannot agree with the distinguished trial judge that the trend of the decisions sanctions contracts of this kind as not against public policy although the case law may now be almost equally divided numerically.

The identical public policy question was presented to the Fifth Circuit under an identical policy involving the public policy of Florida and Virginia. The question was without precedent in both states. Judge Wisdom first went to the jugular vein of the question by an appraisal of the nature of punitive damages under Florida law. He found it to be in accordance with the general rule that punitive damages are assessed in addition to compensatory damages to punish and deter "when the wrong done partakes of a criminal character, though not punishable as an offense against the state * * *." Northwestern National Casualty Company v. McNulty, 307 F.2d 432, 435. After referring to the "few jurisdictions" which recognize punitive damages as compensatory, namely Connecticut, Michigan and New Hampshire, he proceeded to lay the major premise for the determination of public policy by reference to the proverb that "no one shall be permitted to take advantage of his own wrong." Id. 440 quoting Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876. From this he reasoned that "the public policy against coverage is not so much to prevent encouragement of wrongdoing by obstructing the hopes of profit; it is rather to make effective the discouragement of wrong-doing by the imposition of punishment. Where a person is able to insure himself against punishment he gains a freedom of misconduct

inconsistent with the establishment of sanctions against such misconduct." Id. 307 F.2d 440. He likened insurance against punitive damages to insurance against criminal fines or penalties which are undoubtedly violative of public policy and thus concluded that "The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent." Id. 440. Finally he reasoned that if a person against whom punitive damages are assessed is permitted "to shift the burden to an insurance company, punitive damages would serve no useful purpose * * *" and in the end "Society would then be punishing itself for the wrong committed by the insured." Id. 440, 441. Judge Gewin, specially concurring, doubted whether the shifting of the responsibility for the penalty actually tended to encourage a reckless disregard for the safety of others on public highways.

The question next came before the Missouri Court of Appeals. That court adopted the reasoning in McNulty holding that "to allow a motorist to insure himself against judgments imposed against him for punitive damages, which were assessed against him for his wanton, reckless or willful acts, would be contrary to public policy. * * * If a person is able to insure himself against punishment, he gains a freedom inconsistent with the establishing of sanctions against such misconduct." Crull v. Gleb, 382 S.W.2d 17, 23.

About the same time the Tennessee court was treating the question quite differently and arriving at an entirely different result. That court in agreement with Judge Gewin could not agree that the closing of the insurance market on the payment of punitive damages would necessarily accomplish the result of deterring insureds from their reckless and wanton conduct. Moreover, to hold that as a matter of public policy the insured was not protected from a claim of punitive damages would have the effect of partially voiding the policy contract. Lazenby v. Universal Underwriters Ins.

Co., 383 S.W.2d 1. There was also a strong concurring opinion by Mr. Justice White of the Tennessee court disagreeing with the reasoning in McNulty and suggesting that under McNulty, recovery on identical facts would depend upon the whim of the jury, i. e. whether the degree of culpability found by the jury fell on one side of the nebulous line separating gross and wanton negligence from ordinary negligence.

When the question came to the Florida court last year, that court had before it the reasoning and holding in McNulty, Crull and Lazenby. After quoting with approval from Judge Wisdom in McNulty, it tersely disposed of the question by simply saying that "We believe that a person has no right to expect the law to allow him to place responsibility for his reckless and wanton actions on someone else." Nicholson v. American Fire and Casualty Ins. Co., Fla.App., 177 So. 2d 52, 54.

While the Kansas court has not faced the precise question here, it has emphatically embraced the same general concept characterized in McNulty to the effect that "Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive, or a wilful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs." Watkins v. Layton, 182 Kan. 702, 324 P.2d 130, 133, 134. And see Newman v. Nelson, 10 Cir., 350 F.2d 602. While there is much to be said on both sides, we, like Missouri and Florida, are persuaded by the reasoning in McNulty. This leads us to forecast that the Kansas court would hold with the Fifth Circuit, Missouri and Florida that if the wrongdoer is permitted to shift the incidence of the damages to his insurer, the stated purpose for such damages is frustrated.

We do not believe the Kansas courts would be persuaded by the argument pressed in Lazenby that closing the insurance market on the payment of punitive damages would not tend to deter the

reckless and wanton driver. This argument seems to miss the mark, for we may as well say criminal sanctions serve no useful purpose just because they are constantly violated. The question is not so much the efficacy of the policy underlying punitive damages; rather it is a question of the implementation of that policy. Permitting the penalty for the misdeed to be levied on one other than he who committed it cannot possibly implement the policy.

Nor do we think the Kansas court would be persuaded by the argument that if public policy precludes contracts insuring against punitive damage awards, the extent of coverage will vary with the whim of the jury as it undertakes to discern whether a given set of facts constitutes ordinary or gross negligence. This argument has much to commend it, for the fallibility of man makes some jury error inevitable. We must assume, however, any given jury will accurately follow the law and correctly distinguish liability for ordinary from liability for gross and wanton negligence. To hold to the contrary would impugn the integrity of the jury system.

Appellee Dearmore suggests that in any event, any notion that Kansas public policy forbids the enforcement of this insurance contract was superseded by the Kansas Motor Vehicle Safety Responsibility Act, Kansas Statutes § 8–722 et seq., at least insofar as policies complying with the Act (as did this one) are concerned. This Act provides in § 8–750(b) that for a policy of insurance to be evidence of financial responsibility, it "shall insure * * * against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicle * * *". Appellee's argument is based on Hartford Accident and Indemnity Co. v. Wolbarst, 95 N.H. 40, 57 A.2d 151, in which the New Hampshire court held that the similar financial responsibility act of that state superseded state public policy forbidding insurance against damages for injuries intentionally inflicted insofar as a policy complying

with the New Hampshire Act was concerned. Appellant argues that if the New Hampshire Act had this effect on damages for injuries intentionally inflicted, a fortiori the Kansas Act must have a similar effect on damages for injuries inflicted by gross and wanton conduct.

■ In the light of the legislative purpose for such acts, which is "to provide *compensation* for innocent persons that might be injured through faulty operation of motor vehicles * * *", Hartford Accident and Indemnity Co. v. Wolbarst, supra, 57 A.2d 153, (Emphasis ours), it is significant and we think decisive that as we have noted New Hampshire treats exemplary damages as compensatory in nature. See Bixby v. Dunlap, 56 N.H. 456; Adams v. Strain, 80 N.H. 90, 113 A. 209. Therefore, even though intentional injury was involved in Wolbarst, any exemplary damage assessed would be compensatory and their recovery from the insurer within the purpose and intent of the Act. It thus does not follow on the authority of Wolbarst that such Acts require complying policies to cover noncompensatory, i. e. punitive, damage awards. In fact the contrary is demonstrated to our satisfaction by the South Carolina case of Laird v. Nationwide Insurance Company, 243 S.C. 388, 134 S.E.2d 206, which construes the uninsured motorist statute of that state. After first reasoning that the purpose of the statute is to protect the insured against injury by an uninsured motorist only insofar as compensatory damage for bodily injury is concerned, the court held that punitive damages were not recoverable from the insurer because such damages are not awarded as compensation for bodily injury. And see Hanna v. State Farm Mutual Automobile Insurance Company, D.C., 233 F. Supp. 510.

■ We think the same reasoning applies to a policy complying with the Kansas Act with respect to an award of punitive damages and, therefore, Kansas public policy forbidding contracts insuring against punitive damage awards was

not superseded in the case of insurance policies complying with the Kansas Act.

■■ Our disposition of the public policy appeal in favor of American Surety requires us to consider appellees' contention that American Surety was estopped from denying liability for the punitive damage award by its conduct in defending the negligence suit against Dearmore. The short answer to this is that "The doctrines of estoppel and waiver do not in general apply in transactions that are forbidden by statute or that are contrary to public policy." Northwestern National Casualty Company v. McNulty, supra, 307 F.2d 442, 443, quoting Montsdoca v. Highlands Bank and Trust Company, 85 Fla. 158, 95 So. 666. As Judge Wisdom applied the rule to the facts of McNulty, "since public policy forbids an insurer and an insured to enter into an insurance contract covering punitive damages, public policy forbids the accomplishment of the result by an estoppel." Id. 307 F.2d 442. Cf. Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 257, 258, 66 S.Ct. 101, 90 L.Ed. 47; Red Rover Copper Co. v. Industrial Commission, 58 Ariz. 203, 118 P.2d 1102, 1107, 137 A.L.R. 740.

■ Moreover, we do not think full play of the facts of our case work an estoppel. Immediately after the accident, the insured executed an Authorization for Claim Service and Non-Waiver of Rights which stated, "It is agreed that such actions shall not waive any of the rights of the undersigned or of the Company under any contract of insurance." This instrument speaks for itself. Soon after the suit was filed praying for exemplary damages based upon an allegation of gross and wanton negligence and intentional harm, the insurer addressed a letter to the insured stating in part

"You are insured by the American Surety Company under its Policy No. 52336023 which policy has limits of $25,000.00 for personal injury to any one person arising from a single occurrence. As you can see, the prayer for damages is in excess of this stated amount by the sum of $23,141.60. This is to advise you that you are at liberty to secure counsel of your own choice to represent you in regard to this amount which is in excess of coverage. In addition, it is the company's position that they do not afford coverage for punitive damages, and you are also at liberty to secure counsel of your own choice to protect your interests in that regard.

"In addition, the complaint alleges that you willfully committed the acts resulting in the damages to Mr. Harvey S. Gold. The allegations of the complaint are so worded as to indicate this intention. If this proves to be true, it is the company's position that they afforded you no coverage for an intentionally committed wrong, and you of course would be at liberty to secure counsel of your own choice to protect your interest in that regard."

The allegations with respect to intentional harm were later stricken. Upon receipt of this letter the insured called his lawyer who represented him throughout these proceedings. We do not think there is any room for mistake or equivocation concerning the position of the insurer with respect to coverage of punitive damages under the policy. We think the letter to the insured comes well within the Kansas rule requiring the insurer to clearly disclaim liability under a policy and expressly give notice of its reservation of the right to set up the defense of noncoverage, i. e. see Henry v. Johnson, 191 Kan. 369, 381 P.2d 538. It did not disclaim liability and reserve rights in one breath and restore them to the insured in the next as the Kansas court seemed to think was the case in Henry v. Johnson, supra.

The judgment is reversed.