18149

Marie LAIRD, by her Guardian ad Litem, Jimmy Laird, Respondent, v. NATIONWIDE INSURANCE COMPANY, Appellant

(134 S. E. (2d) 206)

*Messrs. Henderson, Salley & Cushman,* of Aiken, *for Appellant,*

*Messrs. Blatt & Fales,* of Barnwell, *for Respondent,*

Messrs. Henderson, Salley & Cushman, of Aiken, for Appellant, in Reply,

January 2, 1964.

Moss, Justice.

The record here reveals that on July 25, 1962, Marie Laird was riding as a passenger in an automobile owned and driven by one Franklin Laird, her brother, when said automobile was involved in a collision with a truck driven by one Tom Barrett and in which said collision the said Marie Laird received bodily injury. Thereafter, the said Marie Laird instituted a suit against the said Franklin Laird and Tom Barrett to recover damages for the bodily injury sustained by her. She alleged that her bodily injury was caused and occasioned by the negligent, reckless and willful conduct of the said Franklin Laird and Tom Barrett. The trial of this action resulted in a judgment in favor of the said Marie Laird in the sum of Ten Thousand Dollars actual damages, equally apportioned against Franklin Laird and Tom Barrett, and also a verdict of Two Thousand Five Hundred Dollars puni-

tive damages against the said Franklin Laird. A judgment was duly entered in the office of the Clerk of the Court for Barnwell County against the said Franklin Laird for Five Thousand Dollars actual damages and Two Thousand Five Hundred Dollars punitive damages, plus court costs in the amount of Twenty-four Dollars. It is agreed that the said Franklin Laird was an uninsured motorist and that his automobile was uninsured.

The present action was commenced by Marie Laird, through her guardian *ad litem,* the respondent herein, against Nationwide Insurance Company, the appellant herein, to enforce payment of the judgment obtained by her against Franklin Laird under two certain policies of insurance issued in favor of Lillian Laird and Jimmy Laird, whereby in each policy the insurer agreed to pay all sums which the aforesaid Lillian Laird and Jimmy Laird, and the relatives of either while residents of the same household, shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insureds and any relative of either while a resident of the same household, up to an amount not exceeding Ten Thousand Dollars, for any one of such persons. It is agreed that Marie Laird is an insured under these policies as a member of the household of the policy holders. These policies provide in part, as follows:

## "INSURING AGREEMENT

"1. Damages for Bodily Injury and Property Damage Caused by Uninsured Automobiles. To pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of: (a) bodily injury, sickness or disease including death resulting therefrom hereinafter called 'bodily injury' sustained by the Insured;"

The appellant, by answer, admits liability to the respondent for the amount of her judgment against Franklin Laird for actual damages and court costs and tendered payment

thereof, but denied that it was liable for the portion of the aforesaid judgment for punitive damages.

The only issue in this case is whether or not the appellant is required to pay the portion of the judgment which is for punitive damages, under the terms and provisions of the aforesaid policies and under the applicable law of this State. This question was heard by the Honorable Bruce Littlejohn, Presiding Judge, without a jury. Thereafter, by order dated May 17, 1963, the Trial Judge held that the appellant was liable to the respondent for the portion of the judgment relating to punitive damages. The appellant gave due notice of intention to appeal to this Court from said order.

The appellant, by its exception, raises two questions: (1) Does the Safety Responsibility Act and the policy in question provide for the payment of punitive damages? (2) Is it against the public policy of this State for a liability insurance policy to cover punitive damages awarded against an uninsured motorist?

Uninsured motorist insurance is of recent origin. It is a new type of automobile insurance which came into being by legislative enactment, as a result of public concern over the increasingly important problem arising from injuries inflicted by motorists who are uninsured and financially irresponsible. Its purpose was to provide financial recompense to innocent persons who receive bodily injuries, property damage and to the dependents of those who are killed through the wrongful conduct of uninsured motorists.

Our Uninsured Motorist Law, modeled after the Virginia Act, was enacted in 1959, 51 Stat. 567, amended in minor respects in 1960, 51 Stat. 1902, and was further amended in 1963, 53 Stat. 526. The Uninsured Motorist Act of 1959, as amended in 1960, and prior to the 1963 amendment, is contained in Section 46-750.11 and Sections 46-750.14 through 46-750.18 of the 1962 Code.

Section 46-750.11 (2) of the Code defines the term "insured" to mean the named insured and, while a resident of

the same household the spouse of any such named insured and relatives of either. It is admitted that the respondent was a daughter of the named insureds and a resident of their household. Hence, she was an insured under the aforesaid section of the Code.

Under Section 46-750.11 (3) of the Code, the term "uninsured motor vehicle" means a motor vehicle as to which there is no bodily injury liability insurance and property damage liability insurance in the amount specified in Section 46-750.13 of the Code.

Section 46-750.13 of the Code provides that "[n]o policy or contract of bodily injury liability insurance" shall be issued or delivered unless it contains the provisions of this section and provides that the policy insure "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicles."

It is provided in Section 46-750.14 of the Code that no policy or contract of insurance shall be issued or delivered as described in Section 46-750.13 of the Code, "unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle."

It is required by Section 46-750.13 of the Code that a liability insurance policy must insure "against loss from the liability imposed by law", while under the uninsured motorist coverage, which appears on said policy by endorsement, is for the benefit of the insured, and those qualifying as such, and does not insure "against liability imposed by law", but does obligate the insurer to pay the insured "all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." Clearly, the legislature, by using this differing language, recognized the distinction between liability coverage and the uninsured motorist endorsement.

It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle but its object is to afford the insured additional protection in the event of an accident. *Horne v. Superior Life Ins. Co.,* 203 Va. 282, 123 S. E. (2d) 401. Two requirements must be met before a person can claim under or receive the benefits of uninsured motorist coverage. Such person must qualify as an "insured" under the endorsement of the policy upon which claim is being made and must be involved in an accident with the owner or operator of an uninsured motor vehicle. The intent of the General Assembly, in enacting the Uninsured Motorist Act, was to provide benefits and protection against the peril of injury by an uninsured motorist to an insured motorist, his family, and the permissive users of his vehicle. *Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co.,* 203 Va. 600, 125 S. E. (2d) 840.

It is admitted that the respondent qualifies as an "insured" under the endorsement of the policy upon which her claim is being made and that she sustained bodily injury as a result of being involved in an accident with the owner and operator of an uninsured motor vehicle.

Recovery under the uninsured endorsement is subject to the condition that the insured establish legal liability on the part of the uninsured motorist. Such an action is one *ex delicto* and the only issues to be determined therein are the liability and the amount of damage. After judgment is entered against the uninsured motorist, a direct action *ex contractu* can be brought to recover from the insurance company on its endorsement, and policy defenses may be properly raised by the insurance company. *Doe v. Brown,* 203 Va. 508, 125 S. E. (2d) 159; *Rodgers v. Danko,* 204 Va. 140, 129 S. E. (2d) 828.

We come now to a construction of the statutes which have to do with liability imposed by the Uninsured Motorist Act. It should be kept in mind that the legislative intent must prevail if it can be reasonably discovered

in the language used, which must be construed in the light of the intended purpose of the Statutes. One of the primary rules in a construction of a statute is that the words used therein should be taken in their ordinary and popular significance, unless there is something in the statute requiring a different interpretation. *Brewer v. Brewer,* 242 S. C. 9, 129 S. E. (2d) 736.

In construing statutes, we must keep in mind the salutary rule as such is expressed in *Creech v. S. C. Public Service Authority,* 200 S. C. 127, 20 S. E. (2d) 645, where it was said:

"It is perhaps unnecessary to say that courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the Legislature. They cannot read into a statute something that is not within the manifest intention of the Legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. The responsibility for the justice or wisdom of legislation rests with the Legislature, and it is the province of the courts to construe, not to make, the laws. There is a marked distinction between liberal construction of statutes, by which courts, from the language used, the subject-matter, and the purposes of those framing them, find out their true meaning, and the act of a court in ingrafting upon a law something that has been omitted, which the court believes ought to have been embraced. The former is a legitimate and recognized rule of construction, while the latter is judicial legislation, forbidden by the constitutional provisions distributing the powers of government among three departments, the legislative, the executive, and the judicial."

Under our law, all statutes relating to the insurance contract are parts of the contract. *New York Life Ins. Co. v. Greer,* 170 S. C. 151, 169 S. E. 837. The policy here in question carried the uninsured endorsement

required by the statutes and no additional charge was made to the policy holder for such endorsement because to make an additional charge would have been contrary to the statute. Section 46-750.14 of the Code. The uninsured endorsement is the contract which the insurance company makes with the insured to protect him against the uninsured motorist. By the insuring clause, the appellant agreed to pay to the insured all sums which the insured should be legally entitled to recover as damages from the owner or operator of an uninsured automobile, because of bodily injury. In fact, Section 46-750.14 refers to Section 46-750.13 which requires "bodily injury liability insurance". We think that the Legislature intended, by the Uninsured Motorist Statutes, to require the insurer to pay to the insured all sums which such insured shall be legally entitled to recover as damages, only for bodily injury from the owner or operator of an uninsured motor vehicle. The amount fixed by Section 46-750.13 of the Code for bodily injury was not to exceed Ten Thousand Dollars to one person.

What damages compensate for bodily injury? In *Bowers v. Charleston & W. C. Ry. Co.,* 210 S. C. 367, 42 S. E. (2d) 705, this Court said:

"Actual or compensatory damages are damages in satisfaction of, or in recompense for, loss or injury sustained. Punitive damages are allowed in the interest of society in the nature of punishment and as a warning and example to deter the wrongdoer and others from committing like offenses in the future. * * *"

In *Shuler v. Heitley,* 209 S. C. 198, 39 S. E. (2d) 360, it was held that exemplary or punitive damages are not given with a view to compensation but are under certain circumstances awarded, in addition to compensation as a punishment to the defendant and as a warning of other wrongdoers.

There is no provision in the Uninsured Motorist Statutes which, either expressly or by implication, requires that the uninsured motorist endorsement must insure against any

and all liability. There is nothing said or implied that the insurer would be liable for punitive or exemplary damages. If such damages had been in contemplation of the Legislature, it could have easily provided therefor in said statutes. The measure of damages, therefore, which the respondent was entitled to recover against the appellant was the amount which would compensate her bodily injury sustained, and such damages are designated as actual or compensatory damages. We cannot read into the Uninsured Motorist Statutes, provisions which are not required thereby. If the statutes in question fail to accomplish the legislative purpose, the remedy lies with the Legislature and not with the Courts.

We conclude that the Uninsured Motorist Statutes and the policy of insurance issued in conformity therewith, do not provide for the payment of punitive damages to a person receiving bodily injury as a result of a collision with an uninsured motorist. The Trial Judge was in error in not so holding. In view of the conclusion we have heretofore reached, it becomes unnecessary for us to decide whether it is against the public policy of this State for a liability insurance policy to provide for the payment of punitive damages awarded against an uninsured motorist.

The judgment of the lower Court allowing the respondent to recover punitive damages from the appellant is reversed and this case is remanded for entry of judgment in favor of the appellant.

TAYLOR, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BRAILSFORD, Justice (dissenting).

I respectfully dissent. The sums recoverable by the respondent from her insurance carrier are those provided by Section 46-750.14 relating to uninsured motorists. They are "all sums which (the insured) shall be legally entitled to recover as damages from the owner or operator of an unin-

sured motor vehicle, *within limits which shall be no less than the requirements of § 46-750.13.*" Here the respondent had recovered judgment for $5,000.00 actual damages and $2,500.00 punitive damages against an uninsured motorist. Both are sums which she is legally entitled to recover as damages and the aggregate of these sums is within the limits fixed by Section 46-750.13. Therefore, under the terms of the statute, she is entitled to recover the full amount of her judgment against the appellant. In my view, the italicized words in the foregoing quotation, incorporating by reference the limits fixed by Section 46-750.13, have no impact on the character of recoverable damages. They relate only to the *amount* of coverage which must be afforded an insured motorist who becomes legally entitled to recover damages from an uninsured motorist.

BUSSEY, J., concurs.