## 18253

SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant v. Charles FULTON, Temporary Administrator of the Estate of Melvin Alexander Fulton, and Temporary Administrator of the Estate of Maggie Gibbs Fulton and John L. Clemer, Temporary Administrator of the Estate of Jake Bostick, Respondents.

(137 S. E. (2d) 769)

*Messrs. Horger & Horger,* of Orangeburg, *for Appellant,*

*Messrs. Luke N. Brown, Jr.,* of Ridgeland, and *Lewis C. Trice,* of Columbia, *for Respondents,*

August 10, 1964.

LEWIS, Justice.

The plaintiff, Southern Farm Bureau Casualty Insurance Company, issued on September 19, 1962, for a term of one year, an automobile liability insurance policy to Melvin Alexander Fulton, which had attached to it an uninsured motorist endorsement. On January 26, 1963, Fulton and his wife, Maggie Gibbs Fulton, were killed in an automobile-train collision while riding as passengers in the automobile

of an uninsured motorist. Actions were thereafter brought against the estate of the uninsured motorist, who was also killed in the collision, for the alleged wrongful deaths of Fulton and his wife. The plaintiff acknowledged coverage under the uninsured motorist endorsement for the wrongful death of Fulton, the named insured, but denied any liability for the wrongful death of the wife on the ground that she was not an insured under the policy definition of that term. It was conceded that the wife did not come within the definition of an insured as contained in the uninsured motorist endorsement in the policy. Question arose, however, as to whether the statutes of this State required the policy issued by the plaintiff to afford coverage to the wife under the circumstances, and this action for declaratory judgment was brought by the plaintiff to determine such question. The lower court held that the wife was an insured under the policy by virtue of the mandatory provisions of the Uninsured Motorist Act, and the plaintiff has appealed.

The question to be decided is whether an uninsured motorist endorsement in an automobile liability insurance policy is required to cover, as an insured, the spouse of the named insured.

Our decision is controlled by the Uninsured Motorist Act of this State. The statutes requiring uninsured motorist coverage in automobile liability insurance policies was first enacted in 1959, 51 Stat. 567, with amendments in 1960, 51 Stat. 1902, and in 1963, 53 Stat. 526. These statutes, as amended prior to 1963, are contained in Section 46-750.11 and Sections 46-750.14 through 46-750.18 of the 1962 Code of Laws; and are a part of the South Carolina Motor Vehicle Safety Responsibility Act, Sections 46-701 through 46-750.28 of the 1962 Code of Laws. Further provisions relating to the establishment of an Uninsured Motorists Fund and the requirements for registration of uninsured motor vehicles, as amended prior to 1963, are found in Sections 46-135 through 46-138.8 of the 1962 Code of Laws.

The Motor Vehicle Safety Responsibility Act was enacted in 1952 and did not require a motorist to carry liability insurance until after he had an accident. This left those who carried insurance exposed to the possibility of financial loss from a collision with the uninsured and financially irresponsible motorist. The General Assembly sought to remedy this by the adoption of the Uninsured Motorist Act as a means of shifting the cost of the uninsured motorist's negligence to the uninsured motorist himself. Under its terms, every person in this State who obtains a license to operate an uninsured motor vehicle must pay an annual fee, not to exceed $20.00, into the Uninsured Motorist Fund. Section 46-136. Therefore, every person who registers and licenses a motor vehicle in this State must show that the vehicle is one as to which there is a liability insurance policy in effect or he must pay the uninsured motorist fee. The Uninsured Motorist Fund, into which the foregoing fees are paid, is distributed annually among the automobile liability insurance companies operating in this State as reimbursement for losses sustained in providing uninsured motorist coverage in the policies issued by them. Section 46-138.4.

Having required every person who registers an uninsured motor vehicle to pay the specified fee into the Uninsured Motorist Fund and that such fund be distributed among the insurance companies providing uninsured motorist coverage, the General Assembly provided in Section 46-750.14 that no policy or contract of bodily injury or property damage automobile liability insurance shall be issued or delivered in this State, unless it contains an endorsement or provisions undertaking to pay "the insured," within specified limits, all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, and that such protection be afforded the policyholder without additional cost.

The term "insured," within the meaning of the Uninsured Motorist Act, as defined in Section 46-750.11 thereof, in-

cludes "the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either." It is admitted that Maggie Gibbs Fulton was the spouse of the named insured and resident of his household. She was, therefore, clearly an "insured" within the definition contained in the foregoing section, and the plaintiff does not seriously contend otherwise. The main controversy arises from the contentions of the parties with respect to the applicability of the provisions of the Uninsured Motorist Act to the policy in question.

The policy issued by the plaintiff in this case was not certified as proof of financial responsibility under Sections 46-747 and 46-748 of the Motor Vehicle Safety Responsibility Act, but was voluntarily procured by the named insured. The plaintiff contends that, since the policy in question was not issued and delivered as proof of financial responsibility, but was a voluntary policy, the parties were free to enter into it without the compulsions imposed by the Motor Vehicle Safety Responsibility Act, here the uninsured motorist provisions thereof. In other words, the plaintiff argues that only those policies certified as proof of financial responsibility are subject to the requirements of the uninsured motorist endorsement, relying upon the principle stated in such cases as *Barkley v. International Mutual Insurance Company*, 227 S. C. 38, 86 S. E. (2d) 602, to the effect that, generally, the compulsions of our financial responsibility act, do not apply to policies which have not been certified as proof of financial responsibility. This principle, however, is inapplicable to the provisions of the Safety Responsbility Act relating to uninsured motorist endorsements.

We find nothing in the Uninsured Motorist Act to indicate a legislative intent to restrict its application only to policies certified as proof of financial responsibility. The legislative purpose in enacting such legislation must be kept in mind. The Act was not designed to provide coverage for the uninsured vehicle but to afford

financial protection to the insured from injury or damage caused by the uninsured and financially irresponsible motorist. *Laird v. Nationwide Insurance Company,* 243 S. C. 388, 134 S. E. (2d) 206. This protection, differing from that referred to in any other part of the Safety Responsibility Act, is afforded under Section 46-750.14 by requiring insurance companies to include the uninsured motorist endorsement in every automobile liability insurance policy issued in this State without additional cost to the policyholder. There is no sound basis upon which to conclude that the General Assembly intended to require uninsured motorist coverage, without additional cost to the insured, in a certified policy and not in one voluntarily procured.

■ The requirements of the Uninsured Motorist Act apply to all automobile liability insurance policies issued or delivered in this State; whether voluntarily procured or certified as proof of financial responsibility. We so held in the recent case of *Hatchett v. Nationwide Mutual Ins. Co.,* S. C., 137 S. E. (2d) 608, Smith's Advance Sheet of July 18, 1964, where it was stated: "Although the policy was voluntarily procured by plaintiff, under the provisions of Section 46-750.14 it is mandatory that all bodily injury liability insurance and property damage liability insurance issued or delivered in this State contain an endorsement or provisions to comply with the Uninsured Motorist Act."

■ Since the statutes required that the policy issued by the plaintiff contain the uninsured motorist endorsement, the endorsement must afford the statutory coverage. *Vernon v. Harleysville Mutual Casualty Company,* S. C., 135 S. E. (2d) 841. Section 46-750.11 defines the "insured" to whom such coverage must be afforded as including the named insured, and while a resident of the same household, the spouse of such named insured. Therefore, the fact that the provisions of the policy in question did not include the wife as an insured is of no avail to the plaintiff. The contract was controlled by and subject to the Uninsured

Motorist Act of this State, and "any policy provisions inconsistent therewith are void and the pertinent provisions of the Statute prevail as much as if expressly incorporated in the policy." *Johnston v. The Commercial Travelers Mutual Accident Association of America,* 242 S. C. 387, 131 S. E. (2d) 91.

The lower court correctly held that, under the mandatory provisions of the statutes, the uninsured motorist endorsement in question included, as an insured, the wife of the named insured.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.