AMERICAN LIBERTY INSURANCE COMPANY, of Birmingham, Alabama, Plaintiff,

v.

S. D. DeWITTE and Bobby W. DeWitte, Defendants.

Civ. A. No. 7964.

United States District Court
E. D. South Carolina,
Charleston Division.

Dec. 11, 1964.

Brockinton & Brockinton, Charleston, S. C., for plaintiff.

Arthur C. Baker, Charleston, S. C., for defendants.

SIMONS, District Judge.

This action is brought pursuant to the Declaratory Judgment Act, Title 28 U.S.C.A. § 2201[1]. Plaintiff herein seeks a declaration of this court that, under the terms of its Thrift Automobile Policy #101074 issued to defendant S. D. DeWitte, no coverage exists as to the claim of his son, defendant Bobby W. DeWitte, under the liability or the medical expense provisions of the policy. This action has been submitted to the court for determination on the pleadings and a stipulation entered into between counsel for the respective parties.

On September 2, 1961, Bobby W. DeWitte, son of the insured S. D. DeWitte, sustained serious injuries to his person as a result of a fire which occurred in the engine of the covered vehicle owned by his father. At the time of the accident Bobby was looking under the hood of the said automobile.

As a result of the accident and ensuing injuries sustained by Bobby, suit was commenced and is now pending in the Court of Common Pleas for Charleston County, State of South Carolina by the defendant Bobby DeWitte against the defendant S. D. DeWitte seeking damages in the amount of $25,000. This action was brought by the plaintiff to determine its right and obligation under the subject policy which was issued on July 26, 1961 for a period of twelve months.

The court will first consider the question of the liability coverage under the subject policy provisions to the insured, S. D. DeWitte, for the injuries sustained by his son, Bobby, as a result of the aforesaid fire which occurred on September 2, 1961.

The defendant contends that the policy was issued subject to Section 46–750.13 and 46–750.21 of the Code of Laws of South Carolina for 1962,[2] and therefore, the exclusion of liability coverage for bodily injury to a son of the insured,[3] under the liability features of the policy is ineffective, null and void, in that such a provision is in conflict with the laws of the State of South Carolina since by permitting express exemptions by statute, the Legislature by implication prohibited any exemptions not so enumerated.

The parties have stipulated that said policy was issued *voluntarily* to S. D. De-

---

1. Sec. 2201. Creation of remedy, provides: "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

2. § 46–750.13 provides: "No policy or contract of bodily injury liability insurance or of property damage liability insurance covering liability arising from the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle then principally garaged or principally used in this State, unless it contains a provision insuring the person named therein and any other person, as insured, using any of those motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle, as follows: Ten thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident and five thousand dollars because of injury to or destruction of property of others in any one accident."

Section 46–750.21 permits certain exclusions from liability policies none of which are applicable in this case.

3. The policy provided that the insurance did not apply under the liability coverage "to bodily injury to the spouse or any parent, son or daughter of the insured, * * *."

Witte prior to the incident of September 2, 1961, giving rise to the claims of Bobby W. DeWitte, and not procured under compulsion of the provisions of the South Carolina Motor Vehicle Safety Responsibility Act.[4]

Therefore, the question now before the court is whether Section 46–750.13 and 46–750.21, supra, also apply to and control the provisions of a motor vehicle liability policy which is issued voluntarily; as they unquestionably apply to certified policies which have been issued pursuant to said Safety Responsibility Act.

Section 46–750.13 [5] was enacted by the South Carolina Legislature in 1959, becoming an effective provision of the Motor Vehicle Safety Responsibility Act on January 1, 1960. It is conceded by defendants that prior to such date the provisions of the South Carolina Motor Vehicle Safety Responsibility Act did not apply to automobile liability policies which were voluntarily issued; and that only the policies issued under the compulsion of said statute were controlled thereby. The Court of Appeals for the Fourth Circuit in State Farm Mutual Automobile Ins. Co. v. Cooper, 233 F.2d 500, 501 [1956] speaking through Judge Soper said:

"We think the statute is not applicable under the prevailing decisions of the Supreme Court of South Carolina and of this Court. The controlling circumstance is that the policy was taken out voluntarily prior to the occurrence of the accident and was not procured thereafter under the compulsions of the statute. There is no general law of the State of South Carolina which requires all owners and operators of motor cars to carry liability insurance and the statute under consideration does not come into play until the owner or operator has been involved in an accident and has been called upon to deposit security to satisfy any judg-

ment against him for damages resulting from the accident under § 46–727 in the Act. Even then the Act does not apply, under the provisions of § 46–728, to an owner or operator if the owner had in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved."

In Farm Bureau Mutual Auto Ins. Co. v. Hammer, 177 F.2d 793, 797 [4th Cir. 1949], the court stated:

"The requirements of the statute, in short, apply only to policies certified as proof of financial responsibility in accordance with the Act. The scheme of the statute is to afford sanctions against any person whose operation of a motor vehicle has resulted in injuries to others, unless he satisfies judgments against him for damages arising from the operation of the vehicle and also proves in the manner provided by the statute that he is financially able to respond in damages for any accidental injury that may subsequently occur. This interpretation of the statute is in accordance with the general holding that financial responsibility acts somewhat similar to the Virginia statute do not apply to policies which have not been certified as proof of financial responsibility at the time of the accident." [Citing authorities].

In Barkley v. International Mutual Ins. Co., 227 S.C. 38, 86 S.E.2d 602 [1955], the Supreme Court of South Carolina said in reference to financial responsibility acts:

"Neither the statute in Alabama or South Carolina requires a person to carry insurance. Until one has an accident, either in South Carolina or Alabama, he can operate a motor vehicle without liability insurance. It is only after an accident that one must furnish proof of financial responsibility or secure a liability pol-

---

4. Sections 46–701 through 46–750.28 of the 1962 Code of Laws for S. C.

5. See Note 2, supra.

icy to cover accidents in the future. * * * The policy in question was not issued and certified as proof of financial responsibility in accordance with the Act, but was a voluntary policy. In other words, the insured was not required by either the law of South Carolina or Alabama to secure the policy in question, but, in so far as this record shows, voluntarily did so. Since the policy was not issued pursuant to the Act, the parties were free to enter into it without the compulsions imposed by that law."

Defendants admit that, prior to January 1, 1960, a policy might be issued with the exclusions relied upon by plaintiff, but contend that, as of January 1, 1960, all such limitations were made inapplicable by the enactment of Section 46–750.13 which they claim makes no distinction between policies voluntarily issued and those issued under compulsion of the Safety Responsibility Act; and therefore all of the provisions of the Act relating to requirements of liability policies apply to those policies issued voluntarily as well as those certified as proof of financial responsibility.

█ Upon close consideration of the Motor Vehicle Safety Responsibility Act it is the opinion of this court that the compulsory provisions contained therein, pertaining to automobile liability policies, were originally intended to apply, and as amended at the time of the subject accident still applied, only to liability policies certified as proof of financial responsibility in accordance with the applicable provisions of the Safety Responsibility Act.[6] Indeed, a "motor vehicle liability policy" is defined in the Safety Responsibility Act as an owner's or an operator's *policy of liability insurance, certified as provided in § 46–748 or 46–749 as proof of* financial responsibility.[7]

The Safety Responsibility Act as amended in 1959 still did not require that all automobiles licensed in South Carolina be covered by a liability insurance policy. It is only after one has had a motor vehicle accident resulting in personal injury, death, or property damage in excess of Fifty Dollars that he is required under the South Carolina Safety Responsibility Act to obtain and have in force a liability insurance policy.[8]

█ However, the provisions of the South Carolina Uninsured Motorist Act, which was enacted in 1959, does require that every person registering and licensing an "uninsured motor vehicle" pay a fee not to exceed $20 into the uninsured motorists fund.[9] For the purposes of these provisions, an "insured vehicle" is described as a motor vehicle as to which there is bodily injury liability insurance and property damage liability insurance, *both in the amounts* specified in § 46–750.13, issued by an insurance carrier authorized to do business in this State.[10] Thus, it is evident that the South Carolina General Assembly intended that a motor vehicle liability policy which is voluntarily issued must comply with the provisions of Section 46–750.13, supra, *only insofar as the amounts of bodily injury and property damage liability are specified in said Section 46–750.13.*

In the recent case of Southern Farm Bureau Casualty Ins. Co. v. Fulton, et al., 137 S.E.2d 769 [1964] the Supreme Court of South Carolina considered the effect upon the principles of law enunciated above by the enactment of the Uninsured Motorist Act in 1959. The Court said at page 771:

"In other words, the plaintiff argues that only those policies certified as proof of financial responsibility are subject to the requirements of the uninsured motorist endorsement, relying upon the principle stated in such cases as Barkley v. Internation-

**6.** Sections 46–748 or 46–749.

**7.** Section 46–702 [7].

**8.** Section 46–722.

**9.** Section 46–138.2.

**10.** Section 46–135[2]; see also Section 46–750.11 [3].

al Mutual Insurance Company, 227 S.C. 38, 86 S.E.2d 602, to the effect that, generally, the compulsions of our Financial Responsibility Act do not apply to policies which have not been certified as proof of financial responsibility. This principle, however, is inapplicable to the provisions of the Safety Responsibility Act relating to uninsured motorist endorsements.

"We find nothing in the Uninsured Motorist Act to indicate a legislative intent to restrict its application only to policies certified as proof of financial responsibility. The legislative purpose in enacting such legislation must be kept in mind. The Act was not designed to provide coverage for the uninsured vehicle but to afford financial protection to the insured from injury or damage caused by the uninsured and financially irresponsible motorist. Laird v. Nationwide Insurance Company, 243 S.C. 388, 134 S.E.2d 206. This protection, differing from that referred to in any other part of the Safety Responsibility Act, is afforded under Section 46–750.14 * * *. The requirements of the Uninsured Motorist Act apply to all automobile liability insurance policies issued or delivered in this State, whether voluntarily procured or certified as proof of financial responsibility."

After carefully considering the language of the uninsured motorist statutes and of Code Section 46–750.13, it is my opinion that the South Carolina Legislature intended a clear distinction between the liability coverage of an automobile policy and the uninsured motorist endorsement thereto. Justice Moss, speaking for the Supreme Court of South Carolina in Laird v. Nationwide Insurance Company, 243 S.C. 388, 134 S.E.2d 206 [1964] said:

"It is required by Section 46–750.13 of the Code that a liability insurance policy must insure 'against loss from the liability imposed by law',

while under the uninsured motorist coverage, which appears on said policy by endorsement, is for the benefit of the insured, and those qualifying as such, and does not insure 'against liability imposed by law', but does obligate the insurer to pay the insured 'all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.'"

Therefore, I find that the principles enunciated in State Farm Mutual Automobile Ins. Co. v. Cooper, supra, in Farm Bureau Mutual Auto Ins. Co. v. Hammer, supra, and in Barkley v. International Mutual Ins. Co., supra, were still applicable when the subject accident occurred.

In considering this question the court has been guided by the reasoning of Judge Moss in the case of Rhame v. National Grange Mutual Ins. Co., 238 S.C. 539, 121 S.E.2d 94, 96 [1961] wherein it was stated:

"Insurers have the right to limit their liabilities and to impose whatever conditions they please on their obligations, provided they are not in contravention of some statutory inhibition or public policy. Accordingly, an insurer need not protect against all liabilities and a clause exempting certain liabilities from coverage is valid."

■ I find that Thrift Automobile Policy #101074 which was voluntarily issued by American Liberty Insurance Company to S. D. DeWitte is not subject to or controlled by the provisions of the South Carolina Safety Responsibility Act; that the exclusionary provision of the liability coverage of said policy, pertaining to spouse, parent, son or daughter of the insured, was valid and in effect at the time of the accident of September 2, 1961; and that the said policy affords no coverage under the liability provisions contained therein, as to the claim of Bobby W. DeWitte resulting from the said accident.

It is, therefore, the judgment of this court:

I. That the plaintiff be and it is not required to defend or to be responsible for any expense in connection with the defense of any suit that may have heretofore been commenced, or which hereafter be commenced against the defendant, S. D. DeWitte, by the other defendant named in this action to recover damages for bodily injury in connection with the fire incident which occurred on September 2, 1961.

II. That the plaintiff be and it is not required to pay any judgment, interest or costs that may be recovered in any suit that may have heretofore been commenced, or which may hereafter be commenced, against the defendant S. D. DeWitte, by the other defendant named in this action, to recover damages for bodily injury in connection with the fire incident which occurred on September 2, 1961.

In regard to the second issue before the court relating to the applicability of the medical expense coverage of the subject policy to the medical expenses incurred by Bobby W. DeWitte as a result of the fire of September 2, 1961, plaintiff alleges that the language of the medical expense provisions of the policy is clear and its meaning so plain that defendant Bobby DeWitte is not entitled to such benefits. The medical expense provision of the policy provides that:

"The company will pay * * * all reasonable medical expense * * for bodily injury caused by accident and sustained by [1] the named insured or a relative while occupying or through being struck by an automobile or trailer of any type; [2] any other person while occupying [a] an owned automobile while being used by an insured. * * * "

From the facts presented to the court, it is undisputed that insured's son was not struck by an automobile or trailer of any type.

The subject automobile liability policy defines occupying as "in or upon, entering into or alighting from." The precise question before this court is whether insured's son, Bobby, was within this definition during the time he was "working on the engine" [11] of insured's car, while the insured was occupying the car.

The general law of South Carolina as regards the construction of insurance policy holds that if the meaning is doubtful, the courts will adopt that interpretation most favorable to the maintaining of liability, and where an insurer writes a policy of insurance, it should be read most strongly against the insurer. As stated by the Supreme Court of South Carolina in the case of Parker v. Jefferson Standard Life Ins. Co., 158 S.C. 394, 397, 155 S.E. 617:

"In the construction of insurance contracts, it is vitally essential that the courts do not ignore the fact that the primary object of all insurance is to insure, and that, in cases of doubt, uncertainty, manifest ambiguity, or susceptibility of two equally reasonable interpretations, since the language used is the selection and arrangement of the insurer, such contracts must be liberally construed in favor of the insured." [Citing authorities.]

In the stipulation entered into between counsel for plaintiff and defendant, it is stated in paragraph four:

"That on the 2nd day of September, 1961, while the said S. D. DeWitte was occupying the said 1952 Oldsmobile automobile but while the said Bobby W. DeWitte was not a passenger in or upon the same, or entering into or alighting therefrom, a fire occurred resulting in serious injuries and burns to the person of Bobby W. DeWitte; that said Bobby W. DeWitte at the time was looking under the hood of the said automobile."

It is noted by the court that the medical expense provisions of the subject policy are not limited to "passengers" in the insured vehicle.

11. See paragraph 7 of plaintiff's complaint.

The court has made an exhaustive search of the South Carolina cases for a decision construing the language in question here and finds that in the case of Reynolds v. Life & Casualty Ins. Co., 166 S.C. 214, 164 S.E. 602, the court held that an insured who was killed while riding on the running board of a truck was within the policy provisions insuring against the result of bodily injuries received " * * * by the collision of or by any accident to any private * * * motor driven automobile *in which* insured is riding or driving." [12] [Emphasis added.]

The court has also considered the numerous cases set out in the annotation in 39 A.L.R.2d 952. Although there is a clear split of authority in the cases construing the terms "in or on, upon, entering into or alighting from," when used in liability policies, I am of the opinion that the better reasoning is found in the case of Madden v. Farm Bureau Mutual Automobile Ins. Co., 82 Ohio App. 111, 79 N.E.2d 586, and the case of Lokos v. New Amsterdam Casualty Co., 197 Misc. 40, 93 N.Y.S.2d 825.

In the Madden case, supra, recovery was allowed an insured who was struck by another vehicle while placing a tire in the trunk compartment of insured's car. The policy provided for medical services rendered to one suffering bodily injuries while "in or upon, entering or alighting from," an automobile, if the injury arose out of the use thereof. The court said the terms "in or upon, entering or alighting" did not specify that the insured be wholly in a vehicle or in any particular part of a vehicle in order to come within the policy provisions.

In the Lokos case, supra, the court allowed recovery by an insured who was injured while tying the bumper on the front of the car. The policy provided liability coverage for bodily injuries sustained by accident "while in or upon, entering or alighting from," an automobile. In allowing recovery the court said:

> "An examination of the word 'upon' in the particular context in which it is found indicates its meaning is related to the idea of use of the automobile. Such meaning is exclusive of other risks intended to be covered by the words 'entering' and 'alighting,' during the course of which acts a person could be said to be upon the automobile. Can it be said that the insurer attached to the word 'upon' a meaning so narrow as to encompass only such cases in which the entire weight of a person's body was resting upon or supported by the vehicle? Considering the usual positions of a person in relation to a car in use and the fact that other enumerated risks include acts of being upon the automobile in the sense of resting upon or being supported by it, it is reasonable to give the term a broader meaning including some acts in which the person is in contact with the car."

It is my opinion that a final decision as to whether insured's son at the time of the accident was "occupying" the subject automobile within the meaning of subject policy provisions will depend upon the exact factual circumstances under which he sustained his injuries, particularly whether or not he was in actual physical contact with the car, i. e.: standing on the bumper, sitting on the fender, working on the engine. Such facts are not sufficiently before the court at this time in order for a judgment to be made. This issue must be decided when, and if, a claim is brought under the medical payments provisions of the subject policy at which time the facts can be fully presented to the court.

It is so ordered.

12. See also Bolt v. Life & Casualty Ins. Co. of Tennessee, 156 S.C. 117, 152 S.E. 766.