**FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY, a corporation, Appellant,**

v.

**George E. GUPTON, Jr., and Minnie Lou Williams, Appellees.**

**No. 10151.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 11, 1966.

Decided March 2, 1966.

Charles H. Gibbs, Charleston, S. C. (Sinkler, Gibbs & Simons, Charleston, S. C., on brief), for appellant.

Morris D. Rosen, Charleston, S. C. (Julian H. Toporek, Charleston, S. C., on brief), for appellee George E. Gupton, Jr.

Before HAYNSWORTH, Chief Judge, J. SPENCER BELL, Circuit Judge, and HUTCHESON, District Judge.

PER CURIAM.

We think the District Court properly concluded that the defendant Gupton was within the protection of the uninsured motorist endorsement of his employer's liability insurance policy.

Gupton, employed as an attendant in an automobile service station, drove his employer's pickup truck to deliver gasoline to a motorist who had run out of fuel. He parked the truck on the shoulder of the road behind the stalled vehicle, removed the can of gasoline from the truck, and then proceeded to empty the gasoline from the can into the tank of the automobile. While thus engaged, the lady motorist, who had summoned him, started up her engine, and, inexplicably, backed her car, pinning Gupton between its bumper and that of the pickup truck.

She, the motorist who caused the injury, had no insurance and, apparently, no other resources suffcient to cover Gupton's damages. Gupton, therefore, sought the benefits of the uninsured motorist endorsement upon his employer's liability insurance.

There is no question but that Gupton, in taking the pickup truck for the purpose of delivering the gasoline, was using the truck with the permission of his employer and in the regular course of his employment. It is conceded by the insurance company, in its action for a declaratory judgment, that if Gupton had not set the brake of the pickup truck when he parked it behind the stalled vehicle and the truck had rolled forward while Gupton was in the process of delivering the gasoline into the automobile's tank and had injured the lady motorist, Gupton "would have been using the pickup truck" within the meaning of the liability insurance coverage. It is contended, however, that the word "use" in the statute prescribing uninsured motorist coverage has a more restricted meaning.

Section 46-750.33 of the Code of Laws of South Carolina, 1962, requires that every automobile liability insurance policy contain an endorsement by which the insurance company undertakes to pay to the insured damages, up to $10,000, which he shall be entitled to recover from the owner or operator of an uninsured motor vehicle. By § 46-750.31 of the South Carolina Code of Laws, 1962, the term "insured" is defined as including, among others, one who "uses" the insured vehicle with the permission of the named insured. If, then, Gupton was "using" the pickup truck while actually engaged in the act of discharging the gasoline, he is entitled to the benefits of the endorsement.

Because the uninsured motorist endorsement in South Carolina is prescribed by statute and because it is agreed that the language of the statute rather than that of the insurance policy is controlling, the insurance company suggests

that the rule of strict construction against the author of the language is inapplicable, and that the statutory requirement should be construed only in accordance with its plain meaning. It finds support for this principle in Laird v. Nationwide Insurance Company, 243 S.C. 388, 134 S.E.2d 206, and Morrow v. American Mutual Fire Insurance Co. of Charleston, S.C., 144 S.E.2d 489. We accept the premise, but we think the statutory language embraces Gupton's case.

When the South Carolina Legislature imposed the requirement of the uninsured motorist endorsement, it did not extend the benefits of that endorsement to one suffering injury from the "ownership, maintenance or use" of an insured vehicle, language appropriately used in § 46–750.32 relating to liability coverages. The uninsured motorist endorsement is imposed only for the benefit of the user of the insured vehicle. Nothing of significance is to be drawn from this circumstance, however.

The liability coverage, of course, protects the owner who has substantial exposure to vicarious liability for the acts of permissive users of the insured automobile. With respect to the uninsured motorist endorsement, the person who needs the benefit of the protection is the user. He may also be the one who owns or maintains the vehicle, but the owner is not obviously exposed to the risk the Legislature sought to compensate, unless he is using the insured automobile.

In prescribing an uninsured motorist endorsement, the Legislature did not define the word "use." It did nothing to give it a "plain meaning" at variance with the meaning of the same word as employed in connection with liability coverages. The most reasonable conclusion is that it employed the word in the same sense, for surely the Legislature realized that the word "use" has been the subject of extended judicial interpretation in connection with the liability cov-

erages.[1] If it had intended that the word be given a more limited construction in the uninsured motorist endorsement, it would have been expected to have said so. If the meaning of the word in connection with the application of the uninsured motorist endorsement can be said to be plain, we think it is the same meaning of the same word as employed in connection with the general liability coverages.

Since Gupton was injured while unloading the insured vehicle and was crushed against its bumper, we think the District Judge properly concluded that the injury arose out of his use of the insured vehicle within the meaning of the uninsured motorist endorsement.

Affirmed.

1. For expansive constructions of the word in connection with liability insurance, see Coletrain v. Coletrain, 238 S.C. 555, 121 S.E.2d 89; Wrenn & Outlaw, Inc. v. The Employers Liability Assurance Corp., 246 S.C. 97, 142 S.E.2d 741.