936 F.2d 567
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William H. ADCOCK, as Personal Representative of the Estate
of Robert Adcock, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
 No. 90-2216.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 25, 1991.
Decided July 2, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, Jr., District Judge. (CA-89-2798-3-0)
 Richard J. Breibart, Coleman, Sawyer, Breibart & McCauley, Lexington, S.C., for appellant.
 Timothy D. St. Clair, Turner, Padget, Graham & Laney, P.A., Columbia, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 William Adcock appeals from the district court's summary judgment dismissal of his contract claim against Allstate Insurance Company. Adcock's teenage son, Kevin, died from injuries sustained while a passenger in a one-car accident. The driver's family (the Stiefels) carried a $25,000 liability policy. Adcock carried an underinsured motorist endorsement of $50,000. He believed he was entitled to benefits from both insurance companies and communicated that belief to Allstate. About four months after the accident, Adcock, represented by an attorney, settled with the Stiefels for $25,000 and released them from all future claims. He then brought this suit against Allstate for breach of contract and bad faith refusal to pay benefits due. The district court granted defendant's motion for summary judgment, and Adcock appealed.
 
 
 2
 Under South Carolina law, recovery under an uninsured motorist endorsement on a policy is subject to the condition that the insured first establish the legal liability of the uninsured motorist. Vernon v. Harleysville Mut. Cas. Co., 244 S.C. 152, 159, 135 S.E.2d 841, 844 (1964); Laird v. Nationwide Insurance Co., 243 S.C. 388, 394, 134 S.E.2d 206, 209 (1964).[1] Because Adcock's release of the Stiefels barred him from ever establishing the condition precedent to his recovery of benefits from his own insurance company, summary judgment was proper on his breach of contract claim.
 
 
 3
 A bad faith refusal to pay a claim is contingent upon a duty to pay. See Bartlett v. Nationwide Mut. Fire Ins. Co., 290 S.C. 154, 348 S.E.2d 530 (S.C.App.1986), appeal dismissed, 297 S.C. 73, 374 S.E.2d 897 (1989). Because Allstate had no contractual obligation to pay after Adcock settled, summary judgment was also proper on this claim.
 
 
 4
 Adcock supplemented his breach of contract claim by arguing that Allstate should be equitably estopped from denying benefits because of misleading statements made by its claims adjuster, Thelma Bryson. The doctrine of equitable estoppel has been used to bar insurance companies from claiming that benefits are not due. See, e.g., Koren v. National Home Life Ass'n, 277 S.C. 404, 288 S.E.2d 392 (1982). The elements of the doctrine are as follows:
 
 
 5
 1. Lack of knowledge and the means of knowledge of the truth as to the facts and circumstances upon which the claim of estoppel is predicated.
 
 
 6
 2. Conduct, representations, or silence amounting to misrepresentation or concealment of facts.
 
 
 7
 3. Reliance on such misrepresentation.
 
 
 8
 4. Resulting detrimental action.
 
 
 9
 Lewis v. City of North Myrtle Beach, 297 S.C. 170, 375 S.E.2d 327 (S.C.App.1988). The party claiming estoppel must show that he had no knowledge of the truth or means of acquiring that knowledge. Id.
 
 
 10
 Adcock described his dealings with Bryson as follows:
 
 
 11
 When I asked her if I should get an attorney she said no and replied that she felt sure that we could get things worked out without legal counsel. I intimated that I would like to settle my claim with Allstate first before turning to Mr. Stiefel's company. Ms. Bryson, however, told me to go ahead and settle with Mr. Stiefel's adjustor first and that the settlement would make no difference in my claim against Allstate. I said that I had spoken with an attorney in my family and that he had said that settlement with Stiefel's insurance first may cause problems with my Allstate claim. She, however, said she knew the law in this area and that settlement with Stiefel would not impair or interfere with my claim with Allstate. I in no way indicated that I had any legal expertise and relied on her apparent knowledge of the law to assure me that my rights would not be infringed upon if I settled first with Stiefel.
 
 
 12
 I was always led to believe that Allstate would make me an offer to settle the claim. Ms. Bryson also led me to believe that no lawyer was necessary. She further advised me on how to reinvest with Allstate after settling with Allstate.
 
 
 13
 Although Bryson had a law degree, Adcock stated during his deposition that she never told him she had such a degree but only that she had some legal knowledge. Adcock admitted that, before he ever started dealing with Bryson, an attorney had told him that settling with the Stiefels' insurance company could cause problems with a recovery from Allstate. Over a month before he settled with the Stiefels, Adcock formally retained an attorney to represent him. Adcock stated during his deposition that he probably would not have retained his own lawyer had he known that Bryson had a law degree.
 
 
 14
 Bryson's misleading statements were made in April or May of 1989. Adcock filed a claim with Allstate, which was denied on June 12. Adcock settled with the Stiefels on July 25. Not only should Adcock's attorney have been able to tell him what the insurance policy and the law clearly stated, but Bryson's denial of his claim should have removed any doubt as to what Allstate intended to pay. The knowledge element of equitable estoppel requires reasonable diligence in finding the truth. Adams v. Adams, 220 S.C. 131, 139, 66 S.E.2d 809, 812 (1951). If Adcock did rely on Bryson's early statements, then his actions in settling were done while turning a blind eye to what he knew or should have known.[2]
 
 
 15
 Thus, the district court did not err in finding no genuine issue of fact as to the knowledge element of equitable estoppel, and we therefore affirm.[3] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 While this case law relates only to uninsured rather than underinsured motorists, the interpreted language--"damages which the insured person is legally entitled to recover"--is the same in both types of policies. Other jurisdictions interpreting the same language as applied to underinsured motorist coverage have also required the insured to obtain a judgment against the underinsured. See Buchanan v. Buchanan, 83 N.C.App. 428, 350 S.E.2d 175 (1986), rev. denied, 318 N.C. 224, 353 S.E.2d 406 (1987); United States Fidelity and Guar. Co. v. Cascio, 723 S.W.2d 209 (Tex.App.1988)
 
 
 [2]
 Had Adcock proceeded by obtaining a judgment from the Stiefels, it is questionable that the $25,000 policy carried by the Stiefels would have been insufficient. Kevin's medical bills were $13,000. Adcock's underinsured motorist policy covered bodily injury and property damage--not specifically wrongful death. Also, regardless of the likelihood of recovering punitive damages in a suit against the Stiefels, punitive damages are not recoverable under uninsured motorist policies in South Carolina. See Laird, 243 S.C. at 397, 134 S.E.2d at 210
 
 
 [3]
 Although the district court did not address Adcock's argument that insurers were prohibited from requiring the insurer's consent to settle with a party who is at fault, see S.C.Code Ann. Sec. 38-77-160, the statute has no applicability in this case